## **EXHIBIT B**

**Board of Directors' Resolutions**

**JUST ENERGY GROUP INC.**
**(the "Corporation")**

**CERTIFIED RESOLUTIONS OF THE DIRECTORS**

    I, JONAH DAVIDS, Executive Vice President, General Counsel and Corporate Secretary of the Corporation, do hereby certify, for and on behalf of the Corporation, and not personally, that attached as Schedule "A" is a true and complete copy of the resolutions (the "**Resolutions**") passed by the Board of Directors of the Corporation. The Resolutions are in full force and effect and are the only resolutions, approval or similar authorization of the Directors of the Corporation specifically dealing with this subject matter.

The undersigned acknowledges that this Certificate may be relied on when delivered by electronic facsimile or portable document format (PDF).

    DATED this 9th day of March, 2021

_____
JONAH DAVIDS
Executive Vice President, General Counsel and Corporate Secretary

SCHEDULE "A"

JOINT RESOLUTIONS OF THE JUST ENERGY ENTITIES
SET FORTH ON SCHEDULE "A" HERETO

**PASSED EFFECTIVE** the 8th day of March, 2021.

These joint resolutions (the "**Joint Resolutions**") constitute corporate authority in accordance with applicable law by all of the members of the boards of directors of each of the Just Energy Entities (as defined in Schedule "A" hereto; each such board of directors, the "**Directors**"), with all of the undersigned waiving any required notice of time, place and purpose of meeting, and are passed as evidenced by the signatures of the undersigned, being all of the directors of each of the Just Energy Entities.

**RECITALS:**

**WHEREAS** the Just Energy Entities are facing short-term liquidity challenges as a result of the recent catastrophic winter storm in Texas, which caused higher than normal customer demand while forcing significant supply offline. As a result, the Just Energy Entities were forced to balance demand through spot market purchases. The unprecedented weather event also led certain Texas energy regulators to set artificially high electricity prices and increased ancillary costs. Consequently, the Just Energy Entities have incurred significant losses.

**AND WHEREAS** the Directors of each Just Energy Entity have examined the evidence presented by members of the Just Energy Entities' management teams and the Just Energy Entities' advisors, and have considered the resulting liquidity issues of the Just Energy Entities as a whole from the recent weather event in Texas. As such, the Directors of each Just Energy Entity have concluded that it is in the best interests of such Just Energy Entity to seek protective measures against the taking or continuance of any action, proceeding or enforcement process against such Just Energy Entity, to prevent the taking of any other steps by any person detrimental to the affairs and operations of such Just Energy Entity and to seek to restructure the affairs of such Just Energy Entity. As a result, it is desirable and in the best interests of each Just Energy Entity that an application be filed by each Just Energy Entity listed as an "Applicant" in Schedule "A" hereto for protection in respect of all of the Just Energy Entities under the *Companies' Creditors Arrangement Act* (the "**CCAA**"), and for Just Energy Group Inc. ("**JEGI**") to seek ancillary relief in respect of such Just Energy Entities under Chapter 15 of the *U.S. Bankruptcy Code* ("**Chapter 15**").

**AND WHEREAS** in order to facilitate and encourage the continued participation of certain officers and other key employees in the restructuring of the affairs of the Just Energy Entities under the CCAA and Chapter 15, the Just Energy Entities, in consultation with FTI Consulting Canada Inc., the proposed monitor (the "**Proposed Monitor**"), have developed a Key Employee Retention Plan (the "**KERP**").

**AND WHEREAS** to facilitate the CCAA proceedings and Chapter 15 proceedings, certain of the Just Energy Entities propose to, in the respective capacities set out therein, enter into restructuring support agreements (the "**Support Agreements**") with (i) Shell Energy North America (Canada) Inc., Shell Energy North America (US), L.P., and Shell Trading Risk Management, LLC (collectively, "**Shell**"); and (ii) BP Canada Energy Company, BP Canada Energy Marketing Corp., BP Energy Company, BP Corporation North America Inc., and BP Canada Energy Group ULC (collectively, "**BP**"), pursuant to which Shell and BP will each

separately agree to, among other things, temporarily waive and forbear from exercising Termination Rights pursuant to the Existing Agreements (each as defined in the respective Support Agreement), in accordance with the terms and conditions set forth in the Support Agreements.

**AND WHEREAS** to facilitate the CCAA proceedings and Chapter 15 proceedings, Just Energy Ontario L.P. ("**JEOLP**") and Just Energy (U.S.) Corp. ("**JEUSC**") propose to enter into certain support arrangements with lenders party to the Ninth Amended and Restated Credit Agreement dated as of September 28, 2020 (as amended, restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**") by and among JEOLP and JEUSC, as borrowers, the lenders from time to time party thereto (the "**Credit Facility Lenders**"), and National Bank of Canada, as administrative agent (the "**Credit Facility Agent**"). The proposed support arrangements contemplate that the Credit Facility Agent and the Credit Facility Lenders will enter into a support agreement with some or all of the Just Energy Entities and agree to, among other things, support the CCAA proceedings and Chapter 15 proceedings and standstill and not take any action (directly or indirectly) as a creditor or with any other creditor with respect to their respective rights and remedies under the Credit Agreement (the "**Credit Facility Support Arrangements**").

**AND WHEREAS** each of the Just Energy Entities, in the applicable capacities set out hereto, wish to enter into a senior secured superpriority debtor-in-possession term sheet (the "**DIP Term Sheet**") dated on or about March 8, 2021, and made between JEGI, JEOLP and JEUSC, as borrowers (the "**Borrowers**"), each of the Just Energy Entities, as guarantors, LVS III SPE XV, TOCU XVII LLC, HVS XVI LLC and OC II LVS XIV LP, as lenders (collectively, the "**DIP Lender**") and Alter Domus (US) LLC, as agent for the DIP Lender (the "**DIP Agent**") in connection with the proceedings under the CCAA. Pursuant to the DIP Term Sheet, the DIP Lender shall extend a credit facility to the Borrowers of up to US$125 million (the "**DIP Credit Facility**").

**AND WHEREAS** each of the Just Energy Entities has agreed to grant security in favour of the DIP Agent, for the benefit of the DIP Lender, in order to secure, *inter alia*, the repayment of funds advanced to the Borrowers under the DIP Credit Facility and the Just Energy Entities' other obligations under the DIP Term Sheet, by seeking a court-ordered charge against and attaching to the Property (as defined in the DIP Term Sheet) in favor of the DIP Agent, for the benefit of the DIP Lender, and by entering into such security documents in favour of the DIP Agent, for the benefit of the DIP Lender, as may be required under the terms of the DIP Term Sheet (collectively, the "**DIP Security**").

**AND WHEREAS** JEGI has entered into an agreement dated February 20, 2021 engaging BMO Nesbitt Burns Inc., as financial advisor (the "**Financial Advisor**") in connection with the restructuring of the Just Energy Entities (the "**Financial Advisor Agreement**").

**AND WHEREAS** in considering these matters, the Directors of each Just Energy Entity have consulted their management teams, counsel to the Just Energy Entities, the Financial Advisor and the Proposed Monitor and received and reviewed information concerning the financial position and prospects of the Just Energy Entities, including the draft 13-week cash flow forecasts of the Just Energy Entities prepared by management, in consultation with the Proposed Monitor (the "**Cash Flow Statements**"), as well as advice from these various parties.

**AND WHEREAS** the Directors of each applicable Just Energy Entity wish to provide such approvals as are necessary to authorize the applicable Just Energy Entity to commence the CCAA proceedings and Chapter 15 proceedings and deliver such notices as are required in connection therewith.

**NOW THEREFORE BE IT RESOLVED THAT**:

*Filings under the Companies' Creditors Arrangement Act*

1. Each of the Just Energy Entities listed as an "Applicant" in Schedule "A" hereto is hereby authorized and directed to:

    (a) make an application under the CCAA to the Ontario Superior Court of Justice (Commercial List) (the "**Court**") to commence proceedings under the CCAA and seek protection from its creditors, which application may be consolidated with that of any of the subsidiaries and affiliates of such Just Energy Entity;

    (b) seek the appointment of the Proposed Monitor in the CCAA proceedings;

    (c) seek approval of the KERP, DIP Term Sheet, the Support Agreements and the Financial Advisor Agreement;

    (d) seek the assistance of any court, tribunal, regulatory or administrative body having jurisdiction in Canada, the United States or any other nation or state to recognize the proceedings under the CCAA or to give effect to any order made in the proceedings under the CCAA, including, without limitation, proceedings under Chapter 15; and

    (e) take any other action or proceeding in Canada, the United States or any other nation or state to contest or defend any action or proceeding by any creditor or other person in Canada, the United States, or any other nation or state.

*Filings under Chapter 15 of the U.S. Bankruptcy Code*

2. Subject to Court approval, JEGI is hereby authorized and directed to act as the foreign representative in respect of the CCAA proceedings for the purpose of having the proceedings recognized in any jurisdiction outside of Canada, and to apply for foreign recognition and approval of the CCAA proceedings in the United States pursuant to Chapter 15 of the *U.S. Bankruptcy Code* and in any other jurisdiction, as necessary, outside of Canada.

3. The retention of Kirkland & Ellis LLP as Chapter 15 counsel and the retention of Jackson Walker as local Texas counsel is hereby authorized and approved and management shall work with such law firms to prosecute the Chapter 15 bankruptcy cases in the U.S. Bankruptcy Court for the Southern District of Texas and to have the CCAA proceedings recognized in the United States, and to take such steps, execute such pleadings, and appear in the court as may be necessary to implement such recognition.

*Key Employee Retention Plan*

4. Subject to the approval of the Court, the adoption and implementation of the KERP, including the funding thereof and, together with the payment of the amounts provided for therein in accordance with the KERP, in substantially the amounts and on substantially the terms set forth in Schedule "B" attached hereto, is hereby authorized and approved by the Directors of each applicable Just Energy Entity.

*Support Agreements*

5. The Directors of each applicable Just Energy Entity hereby determine that the entering into of each of the Support Agreements by such applicable Just Energy Entity in the capacity set out therein is in the best interests of such Just Energy Entity.

6. The Support Agreements, substantially in the forms presented to the Directors of each applicable Just Energy Entity, are each hereby approved, and each applicable Just Energy Entity is authorized to enter into and to perform its obligations under the respective Support Agreement(s).

*Credit Facility Support Arrangements*

7. The Credit Facility Support Arrangements, on substantially the terms presented to the Directors of each of the Just Energy Entities, are hereby approved and the Just Energy Entities are authorized to enter into and to perform their respective obligations thereunder, subject to the execution of documentation acceptable to management of the Just Energy Entities.

8. The Directors of each of the Just Energy Entities hereby authorize any director or officer of each Just Energy Entity to negotiate, finalize and, if deemed appropriate and in the best interests of the applicable Just Energy Entity, to execute any support agreements or other documentation required in connection with the proposed Credit Facility Support Arrangements, or to do all such other acts and things as are required or as such director or officer, in such director's or officer's sole discretion, may determine to be necessary or desirable in order to facilitate the Credit Facility Support Arrangements in connection with the proposed proceedings under the CCAA and Chapter 15 (such determination to be conclusively evidenced by such director's or officer's execution and delivery of any such documents or instruments or the taking of any such action, as the case may be).

*DIP Credit Facility*

9. The form, terms, and provisions of the DIP Term Sheet and each Loan Document (as defined in the DIP Term Sheet), and each other document delivered pursuant to the DIP Security, the transactions contemplated therein (including, without limitation, the borrowings under the DIP Term Sheet), the guarantees, liabilities, obligations, security interests granted, and notes issued, if any, in connection therewith, with all such changes, additions, and modifications thereto as a Director executing the same shall approve, be and hereby are authorized, adopted, and approved in substantially the forms presented to the Directors of each of the Just Energy Entities.

- 5 -

10. Each of the Just Energy Entities is authorized and directed to enter into, incur and perform its respective obligations under the DIP Term Sheet and the other Loan Documents, upon the terms and conditions set forth in the DIP Term Sheet, and to borrow from the DIP Lender and/or guarantee the DIP Credit Facility, as applicable, in accordance with the terms of the DIP Term Sheet.

11. Each of the Just Energy Entities is authorized and directed to grant, enter into and perform its respective obligations under the DIP Security and all such further and other security as may be required by the DIP Agent or the DIP Lender from time to time.

12. The Cash Flow Statements in substantially the form attached as Schedule "C" hereto and the related assumptions have been duly prepared by management of the Just Energy Entities, in consultation with the Proposed Monitor, and are hereby approved by the Directors of each of the Just Energy Entities.

13. The pledge and/or transfer by the shareholder(s) or unitholder(s) of all shares or units in each of the Just Energy Entities, plus whatever additional shares or units in each of the Just Energy Entities may hereafter be issued or transferred to their shareholder(s) or unitholder(s) (collectively, the "**Capital Stock**"), to the DIP Agent pursuant to terms of the DIP Security or the CCAA Orders (as such term is defined in the DIP Term Sheet) or its nominee from time to time as security is approved.

14. The transfer of the Capital Stock by the DIP Agent to one or more transferees consequent upon realization of the DIP Agent's security over the Capital Stock pursuant to terms of the DIP Security or the CCAA Orders are approved.

15. The proper officers of each of the Just Energy Entities are irrevocably authorized and directed to issue new certificates representing the Capital Stock to the DIP Agent or to the DIP Agent's nominees or transferees on the written request of the DIP Agent or its duly authorized representative, agent or attorney (including any receiver appointed by the DIP Agent) without further consent, approval or other action being required by its shareholder(s), unitholder(s) or Directors, in accordance with the terms of the DIP Security or the CCAA Orders.

16. Each of the directors or officers of the Just Energy Entities is authorized to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the DIP Credit Facility or any of the Loan Documents or to do such other things which shall in their sole judgment be necessary, desirable, proper, or advisable to give effect to the foregoing resolutions, which determination shall be conclusively evidenced by his/her or their execution thereof.

17. To the extent that any entity serves as the sole member, general partner, managing member, equivalent manager, or other governing body of any limited liability company, corporation or partnership (each such entity, a "**Controlled Company**"), each director or officer signing on behalf of any of the Just Energy Entities, as applicable, is authorized and empowered to take each of the actions described in these resolutions or any of the actions authorized by these resolutions on behalf of the applicable Controlled Company.

*Financial Advisor Agreement*

18. JEGI is authorized to enter into and perform its obligations under the Financial Advisor Agreement, upon the terms and conditions set forth in the Financial Advisor Agreement, and to make the payments contemplated thereunder in accordance with the terms of the Financial Advisor Agreement.

*Press Releases*

19. The issuance of (i) a press release by JEGI announcing the filing of an application for protection under the CCAA by the applicable Just Energy Entities, and (ii) subject to Court approval, a press release by JEGI announcing the granting of an Initial Order by the Court under the CCAA, substantially in the forms presented to the Directors of JEGI, are hereby authorized and approved, with such additions, deletions or alterations as may be approved by any director or officer of JEGI.

*General*

20. Any one director or officer of each Just Energy Entity is authorized and directed, on behalf of such Just Energy Entity, to negotiate, finalize, execute the DIP Term Sheet, the Support Agreements and the Credit Facility Support Arrangements, swear such affidavits, register or file such further documents, agreements (including any amendments to the DIP Term Sheet, the Support Agreements or any documentation relating to the Credit Facility Support Arrangements), authorizations, elections, endorsements, financing statements, registrations, certificates and instruments (with or without the corporate seal affixed) and to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the DIP Credit Facility, any of the Loan Documents, the Support Agreements or any documentation relating to the Credit Facility Support Arrangements or to do all such other acts and things as are required or as such director or officer, in such director's or officer's sole discretion, may determine to be necessary or desirable in order to facilitate the transactions contemplated by the DIP Term Sheet, the Support Agreements and the Credit Facility Support Arrangements and the commencement and conduct of proceedings under the CCAA and Chapter 15, such determination to be conclusively evidenced by such director's or officer's execution and delivery of any such documents or instruments or the taking of any such action, as the case may be.

21. Without limiting section 20 above, any director or officer of each applicable Just Energy Entity is authorized on behalf of such Just Energy Entity to sign, execute and deliver any shareholder resolution, unanimous shareholder agreement resolution or shareholder declaration or partnership resolution with respect to any entity in which such Just Energy Entity is a shareholder, general partner or limited partner or equivalent to give effect to any of the actions contemplated in section 20 above with respect to any entity in which such Just Energy Entity is a shareholder, general partner or limited partner of equivalent of any of the foregoing.

- 7 -

22. Any agreements, instruments or other documents executed and delivered and any and all acts and things done by any officer or director on or before the date hereof determined to be necessary or desirable by such officer or director related to the proposed CCAA proceedings or Chapter 15 proceedings are ratified, approved and confirmed in all respects.

23. These resolutions may be executed in counterparts and delivered by facsimile or portable document format (PDF), each of which when so executed and delivered shall be an original, but all such counterparts together shall constitute one and the same instrument and, notwithstanding the date of execution of any such counterpart, shall be deemed to have been executed on the date set forth above.

*[Signature page to follow]*

SCHEDULE "A"

Just Energy Entities

**Applicants**

1. JUST ENERGY GROUP INC.
2. JUST ENERGY CORP.
3. ONTARIO ENERGY COMMODITIES INC.
4. UNIVERSAL ENERGY CORPORATION
5. JUST ENERGY FINANCE CANADA ULC
6. HUDSON ENERGY CANADA CORP.
7. JUST MANAGEMENT CORP.
8. JUST ENERGY FINANCE HOLDING INC.
9. 11929747 CANADA INC.
10. 12175592 CANADA INC.
11. JE SERVICES HOLDCO I INC.
12. JE SERVICES HOLDCO II INC.
13. 8704104 CANADA INC.
14. JUST ENERGY ADVANCED SOLUTIONS CORP.
15. JUST ENERGY (U.S.) CORP.
16. JUST ENERGY ILLINOIS CORP.
17. JUST ENERGY INDIANA CORP.
18. JUST ENERGY MASSACHUSETTS CORP.
19. JUST ENERGY NEW YORK CORP.
20. JUST ENERGY TEXAS I CORP.
21. JUST ENERGY, LLC
22. JUST ENERGY PENNSYLVANIA CORP.
23. JUST ENERGY MICHIGAN CORP.
24. JUST ENERGY SOLUTIONS INC.

25. HUDSON ENERGY SERVICES LLC

26. HUDSON ENERGY CORP.

27. INTERACTIVE ENERGY GROUP LLC

28. HUDSON PARENT HOLDINGS LLC

29. DRAG MARKETING LLC

30. JUST ENERGY ADVANCED SOLUTIONS LLC

31. FULCRUM RETAIL ENERGY LLC

32. FULCRUM RETAIL HOLDINGS LLC

33. TARA ENERGY, LLC

34. JUST ENERGY MARKETING CORP.

35. JUST ENERGY CONNECTICUT CORP.

36. JUST ENERGY LIMITED

37. JUST SOLAR HOLDINGS CORP.

38. JUST ENERGY (FINANCE) HUNGARY ZRT.

**Partnerships**

1. JUST ENERGY ONTARIO L.P.

2. JUST ENERGY MANITOBA L.P.

3. JUST ENERGY (B.C.) LIMITED PARTNERSHIP

4. JUST ENERGY QUÉBEC L.P.

5. JUST ENERGY TRADING L.P.

6. JUST ENERGY ALBERTA L.P.

7. JUST GREEN L.P.

8. JUST ENERGY PRAIRIES L.P.

9. JEBPO SERVICES LLP

10. JUST ENERGY TEXAS LP