## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re: | ) Chapter 15 |
|  | ) |
| JUST ENERGY GROUP INC., *et al* | ) Case No. 21-30823 (MI) |
|  | ) |
| Debtors in a Foreign Proceeding,[1] | ) (Jointly Administered) |
|  | ) |

### NOTICE OF FILING OF (I) FACTUM OF THE APPLICANTS
### (STAY EXTENSION HEARING), (II) SECOND AMENDED AND RESTATED
### INITIAL ORDER, AND (III) ENDORSEMENT IN THE CCAA PROCEEDINGS

**PLEASE TAKE NOTICE** that, on March 9, 2021, Just Energy Group, Inc. in its capacity as the authorized foreign representative (the "Foreign Representative") of the above-captioned debtors (collectively, the "Debtors" or "Just Energy"), which are the subject of proceedings under the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (as amended, the "CCAA") in the Ontario Superior Court of Justice, Commercial List (the "CCAA Proceedings" and such court, the "Canadian Court"), initiated the above-referenced chapter 15 case by and through its undersigned counsel.

**PLEASE TAKE FURTHER NOTICE** that, on March 9, 2021, the Canadian Court entered the *Initial Order* (the "Initial Order") in the CCAA Proceeding providing certain relief, including, *inter alia*, a stay of proceedings against Just Energy until and including March 19, 2021.

---

[1]     The identifying four digits of Debtor Just Energy Group Inc.'s local Canada tax identification number are 0469. Due to the large number of debtor entities in these chapter 15 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers are not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at www.omniagentsolutions.com/justenergy.  The location of the Debtors' service address for purposes of these chapter 15 cases is:  100 King Street West, Suite 2360, Toronto, ON, M5X 1E1.

**PLEASE TAKE FURTHER NOTICE** that, on March 18, 2021, Just Energy filed the *Factum of the Applicants (Comeback Hearing)* (the "Comeback Factum") in support of its *Motion Record of the Applicants (Motion for Amended and Restated Initial Order)* to be heard on March 19, 2021 in the CCAA Proceedings (the "Comeback Hearing").

**PLEASE TAKE FURTHER NOTICE** that, on March 19, 2021, the Canadian Court held the Comeback Hearing and consequently entered the *Amended and Restated Initial Order (Amending the Initial Order Dated March 9, 2021)* (the "Amended Initial Order") and a corresponding email endorsement (the "Comeback Endorsement") of the Amended Initial Order in the CCAA Proceeding providing certain relief, including, *inter alia*, a stay of proceedings against Just Energy until and including June 4, 2021.

**PLEASE TAKE FURTHER NOTICE** that, on March 21, 2021, Just Energy filed the *Factum of the Applicants (Stay Extension Hearing)* (the "Stay Extension Factum") in support of its *Motion Record of the Applicants (Motion for Second Amended and Restated Initial Order)* to be heard on March 26, 2021 in the CCAA Proceedings (the "Stay Extension Hearing").  A copy of the Stay Extension Factum is attached hereto as **Exhibit A**.

**PLEASE TAKE FURTHER NOTICE** that, on March 26, 2021, the Canadian Court held the Stay Extension Hearing and consequently entered the *Second Amended and Restated Initial Order (Amending the Initial Order Dated March 9, 2021, as Amended and Restated on March 19)* (the "Second Amended Initial Order"), the *Order (Stay Extension & Other Relief)* (the "Stay Extension Order") and a corresponding email endorsement (the "Stay Extension Endorsement") of the Second Amended Initial Order in the CCAA Proceeding providing certain relief, including, *inter alia*, a stay of proceedings against Just Energy until and including September 30, 2021.  A

copy of the Second Amended Initial Order and Stay Extension Endorsement is attached hereto as **Exhibit B**, **Exhibit C** and **Exhibit D**, respectively.

      **PLEASE TAKE FURTHER NOTICE** that copies of all pleadings filed by the Foreign Representative may be obtained free of charge by visiting www.omniagentsolutions.com/justenergy, by visiting the Court's website at http://www.txs.uscourts.gov (a PACER login and password are required to retrieve a document), or upon written request to the Foreign Representative's United States counsel addressed to: (i) Kirkland & Ellis LLP, Attn.:  Brian Schartz, Neil E. Herman, and Allyson B. Smith, 601 Lexington Avenue, New York, New York 10022; and (ii) Jackson Walker LLP, 1401 McKinney Street, #1900, Houston, Texas 77010, Attn: Matthew D. Cavenaugh and Genevieve M. Graham.

Houston, Texas
May 28, 2021

Respectfully Submitted,

*/s/ Matthew D. Cavenaugh*

| | |
|---|---|
| **JACKSON WALKER LLP** | **KIRKLAND & ELLIS LLP** |
| Matthew D. Cavenaugh (TX Bar No. 24062656) | **KIRKLAND & ELLIS INTERNATIONAL LLP** |
| Genevieve M. Graham (TX Bar No. 24085340) | Brian Schartz, P.C. (TX Bar No. 24099361) |
| 1401 McKinney Street, Suite 1900 | 609 Main Street |
| Houston, Texas 77010 | Houston, Texas 77002 |
| Telephone:  (713) 752-4200 | Telephone:  (713) 836-3600 |
| Facsimile:  (713) 752-4221 | Facsimile:  (713) 836-3601 |
| Email:  mcavenaugh@jw.com | Email:  brian.schartz@kirkland.com |
|     ggraham@jw.com | |
| | -and- |
| *Co-Counsel to the Debtors and Debtors* | |
| *in Possession* | Neil E. Herman (admitted *pro hac vice*) |
| | Allyson B. Smith (admitted *pro hac vice*) |
| | 601 Lexington Avenue |
| | New York, New York 10022 |
| | Telephone:  (212) 446-4800 |
| | Facsimile:  (212) 446-4900 |
| | Email:  neil.herman@kirkland.com |
| |     allyson.smith@kirkland.com |
| | |
| | *Co-Counsel to the Debtors and Debtors in Possession* |

## **Exhibit A**

**Stay Extension Factum**

Court File No. CV-21-00658423-00CL

***ONTARIO***
**SUPERIOR COURT OF JUSTICE**
**COMMERCIAL LIST**

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF JUST ENERGY GROUP INC., JUST ENERGY CORP., ONTARIO ENERGY COMMODITIES INC., UNIVERSAL ENERGY CORPORATION, JUST ENERGY FINANCE CANADA ULC, HUDSON ENERGY CANADA CORP., JUST MANAGEMENT CORP., JUST ENERGY FINANCE HOLDING INC., 11929747 CANADA INC., 12175592 CANADA INC., JE SERVICES HOLDCO I INC., JE SERVICES HOLDCO II INC., 8704104 CANADA INC., JUST ENERGY ADVANCED SOLUTIONS CORP., JUST ENERGY (U.S.) CORP., JUST ENERGY ILLINOIS CORP., JUST ENERGY INDIANA CORP., JUST ENERGY MASSACHUSETTS CORP., JUST ENERGY NEW YORK CORP., JUST ENERGY TEXAS I CORP., JUST ENERGY, LLC, JUST ENERGY PENNSYLVANIA CORP., JUST ENERGY MICHIGAN CORP., JUST ENERGY SOLUTIONS INC., HUDSON ENERGY SERVICES LLC, HUDSON ENERGY CORP., INTERACTIVE ENERGY GROUP LLC, HUDSON PARENT HOLDINGS LLC, DRAG MARKETING LLC, JUST ENERGY ADVANCED SOLUTIONS LLC, FULCRUM RETAIL ENERGY LLC, FULCRUM RETAIL HOLDINGS LLC, TARA ENERGY, LLC, JUST ENERGY MARKETING CORP., JUST ENERGY CONNECTICUT CORP., JUST ENERGY LIMITED, JUST SOLAR HOLDINGS CORP. AND JUST ENERGY (FINANCE) HUNGARY ZRT.

APPLICANTS

# FACTUM OF THE APPLICANTS
## (Stay Extension Hearing)

May 21, 2021

**OSLER, HOSKIN & HARCOURT LLP**
100 King Street West, Suite 6200
Toronto ON  M5X 1B8

**Marc Wasserman** (LSO# 44066M)
Tel:      416.862.4908
Email: mwasserman @osler.com

**Michael De Lellis** (LSO# 48038U)
Tel:      416.862. 5997
Email: mdelellis@osler.com

**Jeremy Dacks** (LSO# 41851R)
Tel:      416.862.4923
Email: jdacks@osler.com

- 2 -

Lawyers for the Applicants

**TO:  SERVICE LIST**

## PART I  -  NATURE OF THIS MOTION

1.      The Applicants obtained relief under the *Companies' Creditors Arrangement Act*, RSC 1985, c C-36 (the "**CCAA**") by an initial order dated March 9, 2021 (the "**Initial Order**").[1] The Initial Order, among other things, appointed the Monitor and granted a stay of proceedings (the "**Stay**") in favour of the Applicants up to and including March 19, 2021. On March 19, 2021, this Court issued an Amended & Restated Initial Order (the "**ARIO**") extending the Stay until June 4, 2021 and granting other related relief.

2.      The Applicants now seek an order (the "**Stay Extension Order**"): (a) extending the Stay to and including September 30, 2021 (the "**Extended Stay Period**"), (b) relieving Just Energy of any obligation to call its annual meeting of shareholders ("**AGM**") until further Order of this Court, and (c) authorizing certain payments of pre-filing intercompany indebtedness, including interest (the "**Intercompany Payments**") to ensure sufficient working capital is held by each Canadian Just Energy Entity[2] to fund its ongoing operations within the CCAA proceedings. The Applicants also seek a Second Amended & Restated Initial Order (the "**SARIO**") amending, among other things, certain provisions in the ARIO involving Commodity Suppliers.

3.      Since the issuance of the ARIO, the Applicants have acted in good faith and with due diligence to pursue this restructuring expeditiously and in a manner that balances the interests of all stakeholders. In particular, the Just Energy Group has worked in close consultation with the Monitor to stabilize its business. It has developed a detailed business plan to account for changes to the business caused by the Texas weather event and to assist its key stakeholders in

---

[1]     The relief requested by the Applicants was supported by the Affidavit of Michael Carter, sworn March 9, 2021 [Initial Order Affidavit]. Capitalized terms not otherwise defined have the same meaning as in the Initial Order Affidavit.

[2]     As defined in the Affidavit of Michael Carter, sworn May 19, 2021 [Third Carter Affidavit].

understanding, among other things, the anticipated operations of the Just Energy Group during, and upon exit from, the current CCAA and Chapter 15 proceedings. It is also in the process of developing a restructuring process to optimize value.

4.      The Applicants submit that this Court has the authority to grant the requested relief. It is appropriate for it to do so to allow the Applicants to continue their ongoing efforts to achieve a going-concern solution to their financial challenges for the benefit of their stakeholders.

## PART II  -FACTS

5.      The facts underlying this Motion are more fully set out in the Third Carter Affidavit and the Second Report of the Monitor.[3] Facts relevant to the requested relief are highlighted below.

## PART III  -ISSUES AND THE LAW

6.      The principal issues on this Motion are whether:

(a)     this Court should grant the requested extension of the Stay;

(b)     this Court should order that Just Energy be relieved of the obligation to call its AGM pending further order of the Court;

(c)     this Court should authorize the Intercompany Payments; and

(d)     the SARIO should be issued in the terms described further below.

## A.      THE STAY EXTENSION SHOULD BE GRANTED

7.      The Initial Order granted a Stay for the period up to and including March 19, 2021. The Stay was subsequently extended under the ARIO to June 4, 2021. The Applicants now seek the Extended Stay Period up to and including September 30, 2021.

---

[3]     Second Report of FTI Consulting Canada Inc., in its capacity as Court-Appointed Monitor, to be filed [Second Report of the Monitor].

- 2 -

8.      On an application other than an initial application, the Court may make a stay order for any period that the Court considers necessary if the applicant satisfies the Court that: a) circumstances exist that make the order appropriate, and b) the applicant has acted, and is acting, in good faith and with due diligence.[4] The Applicants satisfy both branches of this test.

9.      The Applicants submit that the Extended Stay Period is necessary and appropriate in the circumstances. The proposed Extended Stay Period will provide the Applicants with the necessary breathing room to continue to focus on stabilizing their business and going concern operations.  It will also allow the Applicants a reasonable time to develop their proposed restructuring process (including a recapitalization term sheet), and engage with key stakeholders with respect to viable restructuring options.[5]

10.      Further, the Extended Stay Period is necessary to allow an intercreditor issue arising under an Intercreditor Agreement among certain of the Applicants' major creditors to be advanced in tandem with the Applicants' restructuring activities.[6] Although the Applicants intend to take no position on the merits of this inter-creditor dispute, its resolution in an efficient and expeditious manner is an important step in this proceeding.[7]

---

[4]     CCAA, ss. 11.02(2), (3).

[5]     Third Carter Affidavit, para. 54.

[6]     Third Carter Affidavit, para. 54.

[7]     Third Carter Affidavit, paras. 24-26.

- 3 -

11.     Turning to the second branch of the test for a CCAA stay extension, the Applicants have acted and continue to act in good faith and with due diligence in these CCAA proceedings since the granting of the Initial Order.[8]

12.     Specifically, in addition to working diligently to prepare the business plan and, in consultation with the Financial Advisor, to advance restructuring initiatives, the Applicants continue to advocate for a legislative resolution to the Texas weather event. The Applicants have continued the process of disputing the settlements and resettlements in accordance with ERCOT Protocols, and to discuss ongoing issues related to the financial fallout from the Texas weather event with ERCOT, PUCT and other interested parties.[9]

13.     In addition, the Applicants are continuing to engage regularly with a broad range of stakeholders, including Canadian and U.S. regulators, Commodity Suppliers and ISO Services Providers, the DIP Lenders, the Credit Facility Lenders, employees, and others.[10] Within the protection of the Regulatory Stay (as defined in the Initial Order Affidavit), which has been in place since the Filing Date, the Applicants have continued to satisfy all obligations in the ordinary course to regulators which license one or more Just Energy Entities, and all licenses and registrations held by the Applicants as of the Filing Date remain valid and in full force and effect.[11]

14.     The Extended Stay Period is supported by the Monitor. The Second Report of the Monitor includes, among other things, a cash flow forecast demonstrating that, subject to the underlying

---

[8]     A detailed review of the restructuring activities of the Just Energy Group since the ARIO was granted is found in the Third Carter Affidavit at paras. 43-50.

[9]     Details regarding ongoing disputes with ERCOT and other steps to address the impact of the Texas weather event are set out in the Third Carter Affidavit, paras. 37-42, 55.

[10]    Third Carter Affidavit, para. 55.

[11]    Third Carter Affidavit, para. 27.

- 4 -

assumptions contained therein, the Applicants have sufficient funds to continue their operations and fund these CCAA proceedings until September 30, 2021.[12]

## B.    THE ANNUAL SHAREHOLDER MEETING SHOULD BE POSTPONED

15.    Just Energy is a public company governed by the *Canada Business Corporations Act*, RSC 1985, c. C-44, as amended ("**CBCA**"). As such, Just Energy is required pursuant to section 133(1)(b) of the CBCA to call the AGM by no later than September 30, 2021, being six months after the end of Just Energy's preceding financial year.[13]

16.    This Court has the jurisdiction to grant an order relieving Just Energy from the obligation to call the AGM during the CCAA proceeding, subject to further Order of the Court.  Section 133(1) of the CBCA makes it mandatory to <u>call</u> (as distinct from <u>hold</u>) the AGM within the prescribed time period.  However, subsection 133(3) of the CBCA authorizes the corporation to apply to the Court for an order extending the time for calling the annual meeting.[14] Additionally, this Court has the jurisdiction under the CCAA to make any order that it considers appropriate in the circumstances.[15]

17.    This Court has made similar orders relieving a debtor from the obligation to call an AGM in a number of other CCAA proceedings.[16] For example, this Court permitted the company to

---

[12]    Third Carter Affidavit, para. 56.

[13]    Third Carter Affidavit, para. 57.

[14]    CBCA, ss. 133(1), (3).

[15]    CCAA, s. 11.

[16]    *Re Cline Mining Corp.,* 2014 ONSC 6998 at paras. 53-55 [*Cline*]; *Re SkyLink Aviation Inc.,* 2013 ONSC 1500 [Commercial List] at para. 29; *Re Canwest Global Communications Corp.* (2009), 59 C.B.R. (5th) 72 (Ont. Sup. Ct. [Commercial List]) at paras. 53-54 [*Canwest*]; *Re Nortel Networks Corp.,* [2009] O.J. No. 614 (Sup. Ct. [Commercial List]) at para. 8; *Re Laidlaw Inc.* (2002), 34 C.B.R. (4th) 72, (Ont. Sup. Ct. [Commercial List]) at para. 7 [*Laidlaw*]; *Re Sears Canada Inc.,* Initial Order, Court File No. CV-17-11846-00CL (Ont. Sup. Ct. [Commercial List]) at para. 54.

- 5 -

postpone calling its AGM in *Canwest*, on the basis that preparations for calling and holding the meeting would distract the company's key personnel at a time when they needed to focus on the restructuring.[17] The fact that shareholders likely have no economic interest in an insolvent company, at least while it is being restructured, also supports an order permitting the postponement of the AGM.[18]

18.     The Applicants submit that it would not be in the best interests of the restructuring to call the AGM within the statutory time period, which coincides with the end of the proposed Extended Stay Period. It is both permissible and appropriate to grant the requested order relieving Just Energy from the obligation to call the AGM until further order of the Court, for the following reasons:

(a)     The executive management of Just Energy are presently devoting significant efforts to the restructuring with a view to implementing a going-concern and value-maximizing solution for the benefit of all stakeholders. Calling the AGM during the CCAA and Chapter 15 proceedings would divert the attention of Just Energy's executive management team away from the restructuring at this critical juncture.[19]

(b)     One of the key purposes of an AGM is to elect directors.[20] However, if directors are not elected at an AGM, the CBCA contemplates that the incumbent directors will continue to hold office until their successors are elected.[21] The incumbent directors

---

[17]   *Canwest* at paras. 53-54.

[18]   *Cline* at paras. 54-55; *Laidlaw* at para. 7.

[19]   Third Carter Affidavit, para. 58.

[20]   CBCA, s. 106(3).

[21]   CBCA, s. 106(6).

- 6 -

are knowledgeable about the business and it is appropriate that they continue in office in order to minimize disruption while the restructuring is underway.

(c)     A further purpose of an AGM is to place financial information before the shareholders.[22] However, financial and other information is and will continue to be available to the public through the Applicants' court filings, public filings on SEDAR and EDGAR, and Monitor reports which will be easily accessible on the Monitor's website.[23]

19.     The Applicants submit that it is impractical for Just Energy to call the AGM during this CCAA proceeding. Moreover, there currently are no pending shareholder applications to compel Just Energy to call the AGM and no prejudice to shareholders will result from the requested order.[24] It is therefore appropriate to grant the requested order relieving Just Energy from its obligation to call the AGM until further order of this Court.

## C.     INTERCOMPANY PAYMENTS SHOULD BE AUTHORIZED

20.     This Court has the authority pursuant to its broad powers to make any order that it considers appropriate to allow the Intercompany Payments in order to further the Applicants' restructuring.[25] The order sought provides the flexibility required for efficient management of the Just Energy Entities' operations in a tax efficient manner, thereby preserving value for the benefit of all

---

[22]   CBCA, s. 155(1).

[23]   Third Carter Affidavit, para. 58.

[24]   Third Carter Affidavit, para. 60.

[25]   CCAA, s. 11.

stakeholders.[26] The requested order is therefore consistent with the objectives of the CCAA and appropriate in the circumstances.

21.     The Just Energy Group maintains a centralized cash management system to consolidate and track funds generated by the operations of Just Energy and its subsidiaries. As part of that cash management system, certain intercompany loans have been advanced among various of the Just Energy Entities.[27] Specifically, as at May 18, 2021, Just Energy U.S. was indebted to Just Energy Hungary in the amount of U.S. $235 million. Similarly, as at May 18, 2021, Just Energy Hungary was indebted to JE Finance in the amount of U.S. $213 million.[28]

22.     The Applicants are seeking authorization for Just Energy U.S. to repatriate funds on an "as needed" basis  to Canada for use by the Canadian Just Energy Entities as working capital to fund their ongoing operations within the CCAA proceedings. While all Canadian Just Energy Entities currently have sufficient liquidity to fund their operations, Just Energy is concerned that any increase in the volume of transactions executed by the Canadian Just Energy Entities which require the posting of cash collateral or other security such as a letter of credit will deplete available liquidity in Canada and necessitate an inflow of capital. No immediate need for additional liquidly in Canada currently exists but, if such a need arises, the Just Energy Group anticipates that it will be immediate.[29]

23.     The repatriation of funds (if required) is proposed to be effected through a repayment of the intercompany indebtedness between Just Energy U.S. and Just Energy Hungary and, in turn,

---

[26]     Third Carter Affidavit, para. 67.

[27]     Details of these loans may be found in the Third Carter Affidavit, para. 61.

[28]     Third Carter Affidavit, para. 63.

[29]     Third Carter Affidavit, para. 64.

- 8 -

between Just Energy Hungary and JE Finance on a "back to back" basis. This structure is tax efficient. While the Just Energy Group reviewed alternative mechanisms for effecting the repatriation (such as an inter-company transfer secured by a Court-ordered charge), such mechanisms had negative tax implications. The Applicants accordingly submit that the proposed repayment structure is the preferable mechanism to effect a repatriation of funds to Canada, should this be required.[30]

24.    The repayment of intercompany indebtedness in the manner discussed above is not expected to cause prejudice to stakeholders of the Just Energy Group. While all funds under the DIP Facility were advanced to Just Energy U.S., all of the Just Energy Entities are jointly and severally liable for such amounts, and the DIP Lenders' Charge is secured against all present and future assets, property and undertakings of the Just Energy Entities, including all the Canadian Just Energy Entities. Accordingly, a transfer of funds between Just Energy U.S. and the Canadian Just Energy Entities will have a net neutral effect – all such entities are already jointly and severally liable for the indebtedness regardless of which entity has possession and use of the capital.[31]

### D.    THE ARIO SHOULD BE VARIED AS PROPOSED IN THE SARIO

25.    This Court's broad powers under section 11 of the CCAA to make any order it sees fit to achieve the overall objective of the CCAA provide this Court with the jurisdiction to amend or vary a prior order, including the ARIO, if such amendment or variation facilitates the debtor's restructuring of its business as a going concern and achieves the appropriate "balance of prejudices". The proposed variations to the ARIO satisfy these requirements.

---

[30]    Third Carter Affidavit, para. 65.

[31]    Third Carter Affidavit, para. 66.

- 9 -

26.     The three principal amendments to the ARIO sought by the Applicants relate to: (a) the definition of "Qualified Commodity/ISO Supplier"; (b) the definition of "Commodity Agreement"; and (c) the current requirement that Qualified Commodity/ISO Suppliers obtain court authorization to exercise any termination rights. All other minor amendments sought are simply for clarification purposes.[32]

### (a)     *Expanded Definition of Qualified Commodity/ISO Suppliers*

27.     The continuity of the Just Energy Entities' supply sources and the stabilization of the Just Energy Group's business has been facilitated by means of the Qualified Support Agreements entered into with BP, Shell and Macquarie.[33] The Applicants submit that the Just Energy Group's business and restructuring would be enhanced by expanding business-critical supply requirements beyond these three counterparties.[34] The Applicants view a diversified suite of Commodity Agreements as advantageous to alleviate the risk of single source or limited source supply arrangements, which is beneficial to the long-term viability and security of the Just Energy Group's business.[35]

28.     However, all but one of the Just Energy Entities' other main Commodity Suppliers declined to execute a Qualified Support Agreement and ultimately terminated their transactions with the Just Energy Group after the CCAA filing.[36] The remaining Commodity Supplier has not transacted

---

[32]   Third Carter Affidavit, para. 21.

[33]   Third Carter Affidavit, para 12.

[34]   Third Carter Affidavit, para 13.

[35]   Third Carter Affidavit, para 13.

[36]   Third Carter Affidavit, para 11.

with the Just Energy Group in almost 2 years. The Just Energy Entities must therefore seek new supply arrangements in order to fulfill their diversification objectives.

29.     Currently, the ARIO provides that only counterparties to a Commodity Agreement or ISO Agreement with a Just Energy Entity as of the Filing Date can obtain the benefit of the Priority Commodity/ISO Charge (subject to executing a Qualified Support Agreement).[37] Unless this restriction is amended as proposed in the SARIO, the practical effect of this restriction is that the Just Energy Entities will likely be required to post cash collateral or a letter of credit as financial support for any new supply arrangements entered into after the Filing Date.[38]

30.     In order to facilitate new supply sources, therefore, the Applicants are seeking to expand the definition of "Qualified Commodity/ISO Supplier" in the ARIO to include additional parties that may execute a Commodity Agreement with a Just Energy Entity after the Filing Date, subject to execution of a Qualified Support Agreement.[39]

31.     The flexibility for new counterparties to execute a Qualified Supply Agreement, and thereby gain the benefit of the Priority Commodity/ISO Charge, will not only incentivize such parties to conduct business with the Just Energy Group, but also mitigate the need for the Just Energy Group to post (and tie up) financial collateral in respect of such counterparties.[40]

32.     The expanded definition of Commodity Supplier will not prejudice any of the Applicants' creditors. The Applicants are currently transacting in relation to the vast majority of all their

---

[37]   ARIO, para. 27 and Schedule "B".

[38]   Third Carter Affidavit, para. 15.

[39]   Third Carter Affidavit, para. 14.

[40]   Third Carter Affidavit, para. 15.

physical supply, financial hedging and risk management needs with Shell and Mercuria Energy America, LLC. The scope of such transactions will not change (i.e., supply requirements will continue to be dictated exclusively by customer demand). Rather, it is anticipated that only the number of Commodity Agreements under which such transactions are completed will expand, resulting in the diversification of supply sources, to the benefit of the long-term viability and security of the Just Energy Group's business.[41]

33.     Furthermore, the number of Qualified Support Agreements will be limited to eight, being the same number of Secured Suppliers which were eligible to execute a Qualified Support Agreement as at the Filing Date under the terms of the ARIO.[42]

### (b)     *Amended Definition of Commodity Agreement*

34.     The Applicants are also seeking to amend the definition of "Commodity Agreement" to include contracts entered into to protect against fluctuations in currency exchange rates in relation to certain customer obligations.

35.     As explained in the Initial Order Affidavit, many of the Just Energy Group's gas supply agreements, electricity supply agreements, and other agreements for the physical or financial purchase, sale, trading or hedging of natural gas, electricity or environmental credits are in United States dollars, notwithstanding that the services are provided to Canadian customers. Costs under the contract accrue in United States dollars, while revenues accrue in Canadian dollars.[43]

---

[41]    Third Carter Affidavit, para. 16.

[42]    Third Carter Affidavit, para. 17.

[43]    Third Carter Affidavit, para. 18.

36.    In order to manage the risk of fluctuations between these currency exchange rates and lock in the gross margin for such customers, the Just Energy Group regularly executes hedging and other forward contracts. Such foreign currency agreements are consistent with the Just Energy Group's ordinary course risk management policy.[44] Expanding the current definition of "Commodity Agreement" in the ARIO to include such contracts will allow the Just Energy Group to continue entering into new customer contracts, while simultaneously managing their current risk exposure created by the post-filing termination of certain foreign exchange forward contracts.

**(c)** *Termination Rights in Limited Circumstances*

37.    Lastly, the Applicants are seeking to amend paragraph 30 of the ARIO to permit a Qualified Commodity/ISO Supplier, unless otherwise ordered by the Court, to terminate its Commodity Agreement and Qualified Support Agreement entered into after May 26, 2021 without Court authorization in two limited circumstances: (a) if an Order is granted authorizing the exercise of rights and remedies against the Just Energy Entities or the Property under or pursuant to the Definitive Documents and the DIP Lenders' Charge; or (b) these CCAA proceedings or the Applicants' recognition proceedings under Chapter 15 of the United States Bankruptcy Code (the "**Bankruptcy Code**") are dismissed or converted to a liquidation proceeding, including a receivership, bankruptcy, proceeding under Chapter 7 of the Bankruptcy Code or otherwise.[45]

38.    This amendment will incentivize new commodity suppliers to supply to the Just Energy Entities during the CCAA proceeding without requiring that financial collateral be provided. The proposed amendment is not opposed by the DIP Lenders and is supported by the Monitor.[46]

---

[44]    Third Carter Affidavit, para. 18.

[45]    Third Carter Affidavit, para. 19.

[46]    Third Carter Affidavit, para. 20.

- 13 -

39.     The Applicants submit that all of the requested amendments to the ARIO are limited in scope, commercially reasonable and consistent with the protections otherwise afforded to the Just Energy Group by the ARIO. These amendments are designed to further the restructuring process and are entirely consistent with the objectives of the CCAA. There will be no material prejudice to any stakeholder as a result of these amendments.

## PART IV  -  NATURE OF THE ORDER SOUGHT

40.     For all of the reasons above, the Applicant submits that this Court should grant the relief requested and issue the Stay Extension Order and SARIO substantially in the form attached as **Tabs "3" and "4"** to the Motion Record.

ALL OF WHICH IS RESPECTFULLY SUBMITTED this 21st day of May, 2021.

_____

 per Marc Wasserman / Michael De Lellis / Jeremy Dacks

- 14 -

**SCHEDULE "A"**
**LIST OF AUTHORITIES**

| **Case Law** |
| --- |

1.  *Canwest Global Communications Corp., Re* (2009), 59 C.B.R. (5th) 72 (Ont. Sup. Ct. [Commercial List])

2.  *Cline Mining Corp., Re,* 2014 ONSC 6998

3.  *Laidlaw Inc., Re* (2002), 34 C.B.R. (4th) 72 (Ont. Sup. Ct. [Commercial List])

4.  *Nortel Networks Corp., Re*, [2009] O.J. No. 614 (Sup. Ct. [Commercial List])

5.  *Sears Canada Inc., Re,* Initial Order, Court File No. CV-17-11846-00CL (Ont. Sup. Ct. [Commercial List]).

6.  *SkyLink Aviation Inc., Re,* 2013 ONSC 1500 [Commercial List]

SCHEDULE "B"
TEXT OF STATUTES, REGULATIONS & BY-LAWS

*Canada Business Corporations Act*, RSC, 1985, c. C-44

**Election of directors**

106(3) Subject to paragraph 107(b), shareholders of a corporation shall, by ordinary resolution at the first meeting of shareholders and at each succeeding annual meeting at which an election of directors is required, elect directors to hold office for a term expiring not later than the close of the third annual meeting of shareholders following the election.

[…]

**Incumbent directors**

106(6) Notwithstanding subsections (2), (3) and (5), if directors are not elected at a meeting of shareholders the incumbent directors continue in office until their successors are elected.

[…]

**Calling annual meetings**

133(1) The directors of a corporation shall call an annual meeting of shareholders

(a) not later than eighteen months after the corporation comes into existence; and

(b) subsequently, not later than fifteen months after holding the last preceding annual meeting but no later than six months after the end of the corporation's preceding financial year.

[…]

**Order to delay calling of annual meeting**

133(3) Despite subsection (1), the corporation may apply to the court for an order extending the time for calling an annual meeting.

[…]

**Annual financial statements**

155(1) The directors of a corporation shall place before the shareholders at every annual meeting

(a) prescribed comparative financial statements that conform to any prescribed requirements and relate separately to

(i) the period that began on the date the corporation came into existence and ended not more than six months before the annual meeting or, if the corporation has completed a financial year, the period that began immediately after the end of the

last completed financial year and ended not more than six months before the annual meeting, and

(ii) the immediately preceding financial year;

(b) the report of the auditor, if any; and

(c) any further information respecting the financial position of the corporation and the results of its operations required by the articles, the by-laws or any unanimous shareholder agreement.

## *Companies' Creditors Arrangement Act*, RSC, 1985, c C-36

### General power of court

11 Despite anything in the *Bankruptcy and Insolvency Act* or the *Winding-up and Restructuring Act*, if an application is made under this Act in respect of a debtor company, the court, on the application of any person interested in the matter, may, subject to the restrictions set out in this Act, on notice to any other person or without notice as it may see fit, make any order that it considers appropriate in the circumstances.

[…]

### Stays, etc. — other than initial application

11.02(2) A court may, on an application in respect of a debtor company other than an initial application, make an order, on any terms that it may impose,

(a) staying, until otherwise ordered by the court, for any period that the court considers necessary, all proceedings taken or that might be taken in respect of the company under an Act referred to in paragraph (1)(a);

(b) restraining, until otherwise ordered by the court, further proceedings in any action, suit or proceeding against the company; and

(c) prohibiting, until otherwise ordered by the court, the commencement of any action, suit or proceeding against the company.

### Burden of proof on application

11.02(3) The court shall not make the order unless

(a) the applicant satisfies the court that circumstances exist that make the order appropriate; and

(b) in the case of an order under subsection (2), the applicant also satisfies the court that the applicant has acted, and is acting, in good faith and with due diligence.

**IN THE MATTER OF THE COMPANIES' CREDITORS ARRANGEMENT ACT, R.S.C. 1985, C. C 36, AS AMENDED;**

**AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF JUST ENERGY GROUP INC. ET AL.**

**Applicants**

Court File No. CV-21-00658423-00CL

|  |  |
|---|---|
|  | ***ONTARIO***<br>**SUPERIOR COURT OF JUSTICE**<br>**COMMERCIAL LIST**<br><br>PROCEEDING COMMENCED AT Toronto |
|  | **FACTUM OF THE APPLICANTS** |
|  | **OSLER, HOSKIN & HARCOURT LLP**<br>100 King Street West<br>1 First Canadian Place<br>Suite 6200, P.O. Box 50<br>Toronto ON  M5X 1B8<br><br>**Marc Wasserman** (LSO# 44066M)<br>Tel:    416.862.4908<br>Email:  mwasserman@osler.com<br><br>**Michael De Lellis** (LSO# 48038U)<br>Tel:    416.862.5997<br>Email:  mdelellis@osler.com<br><br>**Jeremy Dacks** (LSO# 41851R)<br><br>Tel:    416.862.4923<br>Email:  jdacks@osler.com<br><br>Lawyers to the Applicants |

**<u>Exhibit B</u>**

**Second Amended Initial Order**

Court File No. CV-21-00658423-00CL

**ONTARIO**

**SUPERIOR COURT OF JUSTICE**

**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | **)** | WEDNESDAY, THE 26TH |
| | **)** | |
| JUSTICE KOEHNEN | **)** | DAY OF MAY, 2021 |

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF **JUST ENERGY GROUP INC.**, JUST ENERGY CORP., ONTARIO ENERGY COMMODITIES INC., UNIVERSAL ENERGY CORPORATION, JUST ENERGY FINANCE CANADA ULC, HUDSON ENERGY CANADA CORP., JUST MANAGEMENT CORP., JUST ENERGY FINANCE HOLDING INC., 11929747 CANADA INC., 12175592 CANADA INC., JE SERVICES HOLDCO I INC., JE SERVICES HOLDCO II INC., 8704104 CANADA INC., JUST ENERGY ADVANCED SOLUTIONS CORP., JUST ENERGY (U.S.) CORP., JUST ENERGY ILLINOIS CORP., JUST ENERGY INDIANA CORP., JUST ENERGY MASSACHUSETTS CORP., JUST ENERGY NEW YORK CORP., JUST ENERGY TEXAS I CORP., JUST ENERGY, LLC, JUST ENERGY PENNSYLVANIA CORP., JUST ENERGY MICHIGAN CORP., JUST ENERGY SOLUTIONS INC., HUDSON ENERGY SERVICES LLC, HUDSON ENERGY CORP., INTERACTIVE ENERGY GROUP LLC, HUDSON PARENT HOLDINGS LLC, DRAG MARKETING LLC, JUST ENERGY ADVANCED SOLUTIONS LLC, FULCRUM RETAIL ENERGY LLC, FULCRUM RETAIL HOLDINGS LLC, TARA ENERGY, LLC, JUST ENERGY MARKETING CORP., JUST ENERGY CONNECTICUT CORP., JUST ENERGY LIMITED, JUST SOLAR HOLDINGS CORP. AND JUST ENERGY (FINANCE) HUNGARY ZRT. (each, an "**Applicant**", and collectively, the "**Applicants**")

**SECOND AMENDED AND RESTATED INITIAL ORDER**

**(amending the Initial Order dated March 9, 2021, as amended and restated on March 19, 2021)**

**THIS APPLICATION**, made by the Applicants, pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**"), was heard this day by judicial videoconference via Zoom in Toronto, Ontario due to the COVID-19 pandemic.

**ON READING** the affidavit of Michael Carter sworn March 9, 2021 and the Exhibits thereto (the "**First Carter Affidavit**"), the affidavit of Michael Carter sworn March 16, 2021 and the Exhibits thereto (the "**Second Carter Affidavit**"), the affidavit of Michael Carter sworn March 18, 2021 and the Exhibits thereto (the "**Third Carter Affidavit**"), the affidavit of Margaret Munnelly sworn March 16, 2021 and the Exhibits thereto (the "**Munnelly Affidavit**"), the affidavit of Michael Carter sworn May 19, 2021 and the Exhibits thereto, the pre-filing report of the proposed monitor,  FTI Consulting Canada Inc. ("**FTI**"), dated March 9, 2021, the First Report of FTI in its capacity as the Court-appointed monitor of the Applicants (the "**Monitor**") dated March 18, 2021, the Second Report of the Monitor dated May 21, 2021, and on being advised that the secured creditors who are likely to be affected by the charges created herein were given notice, and on hearing the submissions of counsel for the Applicants and the partnerships listed in Schedule "A" hereto (the "**JE Partnerships**", and collectively with the Applicants, the "**Just Energy Entities**"), the Monitor, Alter Domus (US) LLC (the "**DIP Agent**"), as administrative agent for the lenders (the "**DIP Lenders**") under the DIP Term Sheet (as defined below), the DIP Lenders and such other counsel who were present, and on reading the consent of FTI to act as the Monitor,

**SERVICE**

1.      **THIS COURT ORDERS** that the time for service of the Notice of Application and the Application Record is hereby abridged and validated so that this Application is properly returnable today and hereby dispenses with further service thereof.

**DEFINED TERMS**

2.      **THIS COURT ORDERS** that capitalized terms that are used in this Order shall have the meanings ascribed to them in Schedule "B" hereto or the First Carter Affidavit, as applicable, if they are not otherwise defined herein.

**APPLICATION**

3.      **THIS COURT ORDERS AND DECLARES** that the Applicants are companies to which the CCAA applies. Although not Applicants, the JE Partnerships shall enjoy the benefits of the protections and authorizations provided by this Order.

**PLAN OF ARRANGEMENT**

4.      **THIS COURT ORDERS** that the Applicants shall have the authority to file and may, subject to further order of this Court, file with this Court a plan of compromise or arrangement (hereinafter referred to as the "**Plan**")

**POSSESSION OF PROPERTY AND OPERATIONS**

5.      **THIS COURT ORDERS** that the Just Energy Entities shall remain in possession and control of their respective current and future assets, licenses, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof (the "**Property**"). Subject to further Order of this Court, the Just Energy Entities shall continue to carry on business in a manner consistent with the preservation of their business (the "**Business**") and Property. The Just Energy Entities shall each be authorized and empowered to continue to retain and employ the employees, contractors, staffing agencies, consultants, agents, experts, accountants, counsel and such other persons (collectively "**Assistants**") currently retained or employed by them, with liberty to retain such further Assistants as they deem reasonably necessary or desirable in the ordinary course of business or for the carrying out of the terms of this Order.

6.      **THIS COURT ORDERS** that:

(a)      the Just Energy Entities shall be entitled to continue to utilize the central cash management system currently in place as described in the First Carter Affidavit or, with the consent of the Monitor, the DIP Agent and the DIP Lenders, replace it with another substantially similar central cash management system (the "**Cash Management System**") and that any present or future bank providing the Cash Management System (a "**Cash Management Bank**") shall not be under any obligation whatsoever to inquire into the propriety, validity or legality of any transfer, payment, collection or other action taken under the Cash Management System, or as to the use or application by the Just Energy Entities of funds transferred, paid, collected or otherwise dealt with in the Cash Management System, shall be entitled to provide the Cash Management System without any liability in respect thereof to any Person (as hereinafter defined) other than the Just Energy Entities, pursuant to the terms of the documentation applicable to the Cash Management System, and shall be, in its capacity as provider of the Cash

Management System, an unaffected creditor under any Plan with regard to Cash Management Obligations. All present and future indebtedness, liabilities and obligations of any and every kind, nature or description whatsoever to a Cash Management Bank under, in connection with, relating to or with respect to any and all agreements and arrangements evidencing or in respect of treasury facilities and cash management products (including, without limitation, all pre-authorized debit banking services, electronic funds transfer services, overdraft balances, corporate credit cards, merchant services and pre-authorized debits) provided by a Cash Management Bank to any Just Energy Entity, and any unpaid balance thereof, are collectively referred to herein as the "**Cash Management Obligations**";

(b)     during the Stay Period (as defined below), no Cash Management Bank shall, without leave of this Court: (i) exercise any sweep remedy under any applicable documentation (provided, for greater certainty, that the cash pooling and zero-balancing account services provided with respect to the JPMorgan accounts held by the U.S. Bank Account Holders may continue in the ordinary course); (ii) exercise or claim any right of set-off against any account included in the Cash Management System, other than set-off permitted pursuant to paragraph 8 against applicable Authorized Cash Collateral solely in respect of any Cash Management Obligations; or (iii) subject to paragraph 6(d)(ii), modify the Cash Management System;

(c)     any of the Cash Management Banks may rely on the representations of the applicable Just Energy Entities with respect to whether any cheques or other payment order drawn or issued by the applicable Just Energy Entity prior to, on, or subsequent to the date of this Order should be honoured pursuant to this or any other order of this Court, and such Cash Management Bank shall not have any liability to any party for: (i) relying on such representations by the applicable Just Energy Entities as provided for herein; or (ii) honouring any cheque (whether made before, on or after the date hereof) in a good faith belief that the Court has authorized such cheque or item to be honoured;

(d)     (i) those certain existing deposit agreements between the Just Energy Entities and the Cash Management Banks shall continue to govern the post-filing cash management relationship between the Just Energy Entities and the Cash Management Banks, and

5

that all of the provisions of such agreements shall remain in full force and effect; (ii)(A) changes to the Cash Management System in accordance with the Lender Support Agreement shall be permitted; and (B) the Just Energy Entities, with the consent of the Monitor, the DIP Agent, the majority of the DIP Lenders and the Cash Management Banks may, without further Order of this Court, implement changes to the Cash Management System and procedures in the ordinary course of business pursuant to the terms of those certain existing deposit agreements, including, without limitation, the opening and closing of bank accounts, where such changes are not otherwise implemented pursuant to paragraph 6(d)(ii)(A); (iii) all control agreements in existence prior to the date of this Order shall apply; and (iv) the Cash Management Banks are authorized to debit the Just Energy Entities' accounts in the ordinary course of business in accordance with the Cash Management System arrangements without the need for further order of this Court for all undisputed Cash Management Obligations owing to the Cash Management Banks;

(e)     the Cash Management Banks shall be entitled to the benefit of and are hereby granted a charge (the "**Cash Management Charge**") on the Property to secure the Cash Management Obligations due and owing and that have not been paid in accordance with the applicable Cash Management Arrangements (as defined in the Lender Support Agreement). The Cash Management Charge shall have the priority set out in paragraphs 53-55 herein; and

(f)     the Just Energy Entities are authorized but not directed to continue to operate under the merchant processing agreements with JPMorgan Chase Bank, N.A., Paymentech, LLC ("**Paymentech**") (collectively and as amended, restated, supplemented, or otherwise modified from time to time, the "**Merchant Processing Agreement**"). The Just Energy Entities are authorized to pay or reimburse Paymentech for fees, charges, refunds, chargebacks, reserves and other amounts due and owing from the Just Energy Entities to Paymentech (the "**Merchant Services Obligations**") whether such obligations are incurred prior to, on or after the date hereof, and Paymentech is authorized to receive or obtain payment for such Merchant Services Obligations, as provided under, and in the manner set forth in, the Merchant Processing Agreement, including, without limitation, by way of recoupment or set-off without further order of the Court.

7.      **THIS COURT ORDERS** that, except as specifically permitted herein, the Just Energy Entities are hereby directed, until further Order of this Court: (a) to make no payments of principal, interest thereon or otherwise on account of amounts owing by any of the Just Energy Entities to any of their respective creditors as of this date; (b) to grant no security interests, trust, liens, charges or encumbrances upon or in respect of any of the Property; and (c) to not grant credit or incur liabilities except in the ordinary course of the Business; provided, however, that the Just Energy Entities, until further order of this Court, are hereby permitted, subject to the terms of the Definitive Documents: (i) with the consent of the Monitor, to provide cash collateral ("**Authorized Cash Collateral**") to third parties (the "**Collateral Recipients**"), including to the Cash Management Banks in accordance with the Lender Support Agreement, with respect to obligations incurred before, on or after the date hereof, and to grant security interests in such Authorized Cash Collateral in favour of the Collateral Recipients, where so doing is necessary to operate the Business in the normal course during these proceedings;   (ii) subject to the terms of the Lender Support Agreement, to reimburse the reasonable documented fees and disbursements of one Canadian legal counsel, one U.S. legal counsel, one local counsel in Texas and one financial advisor to the agent (the "**CA Agent**") and the lenders (the "**CA Lenders**") under the Credit Agreement, whether incurred before or after the date of this Order; (iii) subject to the terms of the Lender Support Agreement, to pay all non-default interest and fees to the CA Agent and the CA Lenders in accordance with its terms; and (iv) to repay advances under the Credit Agreement solely for the purpose of creating availability under the Revolving Facilities in order for the Just Energy Entities to request the issuance of Letters of Credit under the Revolving Facilities to continue to operate the Business in the ordinary course during these proceedings, subject to: (A) obtaining the consent of the Monitor with respect to the issuance of the Letters of Credit under the Revolving Facilities; and (B) receipt of written confirmation from the applicable CA Lender(s) under the Credit Agreement that such CA Lender(s) will issue a Letter of Credit of equal value within one (1) Business Day thereafter. Capitalized terms used but not otherwise defined in this paragraph shall have the meanings ascribed thereto in the Credit Agreement.

8.      **THIS COURT ORDERS** that the holders of cash collateral provided by the Just Energy Entities prior to the date hereof or any Collateral Recipients of Authorized Cash Collateral (the foregoing, collectively, "**Cash Collateral**") shall be authorized to exercise any available rights of

set-off in respect of such Cash Collateral with respect to obligations secured thereby, whether incurred before, on or after the date hereof.

9.    **THIS COURT ORDERS** that the Charges (as defined below) shall rank junior in priority to any liens, security interests and charges attached to Cash Collateral in favour of the holders thereof, and shall attach to the Cash Collateral only to the extent of any rights of any Just Energy Entity to the return of such Cash Collateral.

10.    **THIS COURT ORDERS** that, subject to the terms of the Definitive Documents (as hereinafter defined), the Just Energy Entities shall be entitled but not required to pay the following amounts whether incurred prior to, on or after the date of this Order:

(a)    all outstanding and future wages (including, without limitation, the Q3 bonus described in the Munnelly Affidavit), salaries, commissions, employee benefits, contributions in respect of retirement or other benefit arrangements, vacation pay and expenses payable on or after the date of this Order, in each case incurred in the ordinary course of business and consistent with existing compensation policies and arrangements;

(b)    all outstanding and future amounts owing to or in respect of other workers providing services in connection with the Business and payable on or after the date of this Order, incurred in the ordinary course of business and consistent with existing arrangements;

(c)    the fees and disbursements of any Assistants retained or employed by the Just Energy Entities in respect of these proceedings at their standard rates and charges, which, in the case of the Financial Advisor (as defined below) shall be the amounts payable in accordance with the Financial Advisor Agreement (as defined below);

(d)    with the consent of the Monitor in consultation with the agent under the Credit Agreement (or its advisors), amounts owing for goods or services actually provided to any of the Just Energy Entities prior to the date of this Order by third parties, if, in the opinion of the Just Energy Entities, such third party is critical to the Business and ongoing operations of the Just Energy Entities;

(e)    any taxes (including, without limitation, sales, use, withholding, unemployment, and excise) not covered by paragraph 12 of this Order, and whereby the nonpayment of

which by any Just Energy Entity could result in a responsible person associated with a Just Energy Entity being held personally liable for such nonpayment; and

(f)     taxes related to revenue, State income or operations incurred or collected by a Just Energy Entity in the ordinary course of business.

11.     **THIS COURT ORDERS** that, except as otherwise provided to the contrary herein and subject to the terms of the Definitive Documents, the Just Energy Entities shall be entitled but not required to pay all reasonable expenses incurred by the Just Energy Entities in carrying on the Business in the ordinary course after this Order, and in carrying out the provisions of this Order, which expenses shall include, without limitation:

(a)     all expenses and capital expenditures reasonably necessary for the preservation of the Property or the Business including, without limitation, payments on account of insurance (including directors and officers' insurance), maintenance and security services; and

(b)     payment for goods or services actually supplied to the Just Energy Entities following the date of this Order.

12.     **THIS COURT ORDERS** that the Just Energy Entities shall remit, in accordance with legal requirements, or pay:

(a)     any statutory deemed trust amounts in favour of the Crown in right of Canada or of any Province thereof or any other taxation authority which are required to be deducted from employees' wages, including, without limitation, amounts in respect of (i) employment insurance, (ii) Canada Pension Plan, (iii) Quebec Pension Plan, and (iv) income taxes;

(b)     all goods and services or other applicable sales taxes (collectively, "**Sales Taxes**") required to be remitted by the Just Energy Entities in connection with the sale of goods and services by the Just Energy Entities, but only where such Sales Taxes are accrued or collected after the date of this Order, or where such Sales Taxes were accrued or collected prior to the date of this Order but not required to be remitted until on or after the date of this Order; and

(c)     any amount payable to the Crown in right of Canada or of any Province thereof or any political subdivision thereof or any other taxation authority in respect of municipal realty, municipal business or other taxes, assessments or levies of any nature or kind which are entitled at law to be paid in priority to claims of secured creditors and which are attributable to or in respect of the carrying on of the Business by the Just Energy Entities.

**RESTRUCTURING**

13.     **THIS COURT ORDERS** that the Just Energy Entities shall, subject to such requirements as are imposed by the CCAA and subject to the terms of the Definitive Documents, have the right to:

(a)     permanently or temporarily cease, downsize or shut down any of their Business or operations;

(b)     terminate the employment of such of its employees or temporarily lay off such of its employees as it deems appropriate; and

(c)     pursue all avenues of refinancing, restructuring, selling and reorganizing the Business or Property, in whole or part, subject to prior approval of this Court being obtained before any material refinancing, restructuring, sale or reorganization,

all of the foregoing to permit the Just Energy Entities to proceed with an orderly restructuring of the Just Energy Entities and/or the Business (the "**Restructuring**").

**LEASES**

14.     **THIS COURT ORDERS** that until a real property lease is disclaimed  in accordance with the CCAA, the Just Energy Entities shall pay all amounts constituting rent or payable as rent under real property leases (including, for greater certainty, common area maintenance charges, utilities and realty taxes and any other amounts payable to the landlord under the lease) or as otherwise may be negotiated between the applicable Just Energy Entity and the landlord from time to time ("**Rent**"), for the period commencing from and including the date of this Order, twice-monthly in equal payments on the first and fifteenth day of each month, in advance (but not in arrears).  On

the date of the first of such payments, any Rent relating to the period commencing from and including the date of this Order shall also be paid.

15. **THIS COURT ORDERS** that the Just Energy Entities shall provide each of the relevant landlords with notice of the relevant Just Energy Entity's intention to remove any fixtures from any leased premises at least seven (7) days prior to the date of the intended removal. The relevant landlord shall be entitled to have a representative present in the leased premises to observe such removal and, if the landlord disputes the entitlement of a Just Energy Entity to remove any such fixture under the provisions of the lease, such fixture shall remain on the premises and shall be dealt with as agreed between any applicable secured creditors, such landlord and the relevant Just Energy Entity, or by further Order of this Court upon application by the Just Energy Entities on at least two (2) days notice to such landlord and any such secured creditors. If any Just Energy Entity disclaims the lease governing such leased premises in accordance with Section 32 of the CCAA, it shall not be required to pay Rent under such lease pending resolution of any such dispute (other than Rent payable for the notice period provided for in Section 32(5) of the CCAA), and the disclaimer of the lease shall be without prejudice to the Applicant's claim to the fixtures in dispute.

16. **THIS COURT ORDERS** that if a notice of disclaimer is delivered pursuant to Section 32 of the CCAA, then (i) during the notice period prior to the effective time of the disclaimer, the landlord may show the affected leased premises to prospective tenants during normal business hours, on giving the relevant Just Energy Entity and the Monitor 24 hours' prior written notice, and (ii) at the effective time of the disclaimer, the relevant landlord shall be entitled to take possession of any such leased premises without waiver of or prejudice to any claims or rights such landlord may have against the relevant Just Energy Entity in respect of such lease or leased premises, provided that nothing herein shall relieve such landlord of its obligation to mitigate any damages claimed in connection therewith.

**NO PROCEEDINGS AGAINST THE JUST ENERGY ENTITIES, THE BUSINESS OR THE PROPERTY**

17. **THIS COURT ORDERS** that until and including June 4, 2021 or such later date as this Court may order (the "**Stay Period**"), no proceeding or enforcement process before any court, tribunal, agency or other legal or, subject to paragraph 18, regulatory body (each, a "**Proceeding**") shall be commenced or continued against or in respect of any of the Just Energy Entities or the

Monitor or their respective employees and representatives acting in such capacities, or affecting the Business or the Property, except with the prior written consent of the Just Energy Entities and the Monitor, or with leave of this Court, and any and all Proceedings currently under way against or in respect of the Just Energy Entities or affecting the Business or the Property are hereby stayed and suspended pending further Order of this Court.

**NO EXERCISE OF RIGHTS OR REMEDIES**

18.     **THIS COURT ORDERS** that during the Stay Period, all rights and remedies of any individual, firm, corporation, organization, governmental unit, body or agency, foreign regulatory body or agency or any other entities (all of the foregoing, collectively being "**Persons**" and each being a "**Person**") against or in respect of the Just Energy Entities or the Monitor, or their respective employees and representatives acting in such capacities, or affecting the Business or the Property, are hereby stayed and suspended except with the written consent of the Just Energy Entities and the Monitor, or leave of this Court, provided that nothing in this Order shall: (i) empower the Just Energy Entities to carry on any business which the Just Energy Entities are not lawfully entitled to carry on, (ii) subject to paragraph 19, affect such investigations, actions, suits or proceedings by a regulatory body as are permitted by Section 11.1 of the CCAA, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien.

19.     **THIS COURT ORDERS** that notwithstanding Section 11.1 of the CCAA, all rights and remedies of provincial energy regulators and provincial regulators of consumer sales that have authority with respect to energy sales against or in respect of the Just Energy Entities or their respective employees and representatives acting in such capacities, or affecting the Business or the Property, are hereby stayed and suspended during the Stay Period except with the written consent of the Just Energy Entities and the Monitor, or leave of this Court on notice to the Service List.

**NO INTERFERENCE WITH RIGHTS**

20.     **THIS COURT ORDERS** that during the Stay Period, no Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Just Energy Entities except with

the written consent of the Just Energy Entities and the Monitor, leave of this Court or as permitted under any Qualified Support Agreement or the Lender Support Agreement.

## CONTINUATION OF SERVICES

21.     **THIS COURT ORDERS** that during the Stay Period, except as permitted under any Qualified Support Agreement or the Lender Support Agreement, all Persons having oral or written agreements with any Just Energy Entity or statutory or regulatory mandates for the supply of goods and/or services, including without limitation all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation services, utility or other services to the Just Energy Entities or the Business, are hereby restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Just Energy Entities, and that the Just Energy Entities shall be entitled to the continued use of their current premises, telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case, that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Just Energy Entities in accordance with normal payment practices of the Just Energy Entities or such other practices as may be agreed upon by the supplier or service provider and the applicable Just Energy Entity and the Monitor, or as may be ordered by this Court.

## NON-DEROGATION OF RIGHTS

22.     **THIS COURT ORDERS** that, subject to paragraph 30 but notwithstanding any other paragraphs of this Order, no Person shall be prohibited from requiring immediate payment for goods, services, use of leased or licensed property or other valuable consideration provided on or after the date of this Order, nor shall any Person be under any obligation on or after the date of this Order to advance or re-advance any monies or otherwise extend any credit to any of the Just Energy Entities. Nothing in this Order shall derogate from the rights conferred and obligations imposed by the CCAA.

## KEY EMPLOYEE RETENTION PLAN

23.     **THIS COURT ORDERS** that the Key Employee Retention Plan (the "**KERP**"), as described in the Second Carter Affidavit and attached as Confidential Appendix "Q" thereto, is

hereby approved and the Just Energy Entities are authorized to make payments contemplated thereunder in accordance with the terms and conditions of the KERP.

24.     **THIS COURT ORDERS** that the key employees referred to in the KERP (the "**Key Employees**") shall be entitled to the benefit of and are hereby granted a charge on the Property (the "**KERP Charge**"), which charge shall not exceed the aggregate amount of C$2,012,100 for Canadian dollar payments and US$ 3,876,024 for U.S. dollar payments, to secure any payments to the Key Employees under the KERP. The KERP Charge shall have the priority set out in paragraphs 53-55 herein.

**LENDER SUPPORT AGREEMENT**

25.     **THIS COURT ORDERS** that the Lender Support Agreement is hereby ratified and approved and that, upon the occurrence of a termination event under the Lender Support Agreement, the CA Lenders may exercise the rights and remedies available to them under the Lender Support Agreement in accordance with the terms thereof.

**PRE-FILING SECURITY INTERESTS**

26.     **THIS COURT ORDERS** that any obligations secured by a valid, enforceable and perfected security interest upon or in respect of any of the Property pursuant to a security agreement which includes as collateral thereunder any Property acquired after the date of the applicable security agreement ("**After-Acquired Property**"), shall continue to be secured by the Property (including After Acquired Property that may be acquired by the applicable Just Energy Entities after the commencement of these proceedings) notwithstanding the commencement of these proceedings, subject to the priority set out in paragraphs 53-55 herein.

**COMMODITY SUPPLIERS**

27.     **THIS COURT ORDERS** that each Qualified Commodity/ISO Supplier shall be entitled to the benefit of and is hereby granted a charge (together, the "**Priority Commodity/ISO Charge**") on the Property in an amount equal to the value of the Priority Commodity/ISO Obligations. The value of the Priority Commodity/ISO Obligations shall be determined in accordance with the terms of the existing agreements or arrangements between the applicable Just Energy Entity and the Qualified Commodity/ISO Supplier or, in the event of any dispute, by the

Court. The Priority Commodity/ISO Charge shall have the priority set out in paragraphs 53-55 herein.

28.     **THIS COURT ORDERS** that the Commodity/ISO Supplier Support Agreements are hereby ratified, approved and deemed to be Qualified Support Agreements.

29.     **THIS COURT ORDERS** that the Just Energy Entities are hereby authorized and empowered to execute and deliver up to eight (8) Qualified Support Agreements.

30.     **THIS COURT ORDERS** that upon the occurrence of an event of default under a Qualified Support Agreement, the applicable Qualified Commodity/ISO Supplier may exercise the rights and remedies available to it under its Qualified Support Agreement, or upon five (5) days' notice to the Just Energy Entities, the Monitor and the Service List, may apply to this Court to seek the Court's authorization to exercise any and all of its other rights and remedies against the Just Energy Entities or the Property under or pursuant to its Commodity Agreement or ISO Agreement and the Priority Commodity/ISO Charge, including without limitation, for the appointment of a receiver, receiver and manager or interim receiver, or for a bankruptcy order against the Just Energy Entities and for the appointment of a trustee in bankruptcy of the Just Energy Entities provided that  a Qualified Commodity/ISO Supplier may, unless otherwise ordered by the Court, terminate any Commodity Agreements and Qualified Support Agreements entered into after May 26, 2021 without obtaining the Court's authorization in the event that: (i) an Order is granted in these proceedings that authorizes the exercise of rights and remedies against the Just Energy Entities or the Property under or pursuant to the Definitive Documents and the DIP Lenders' Charge (as defined below); or (ii) these proceedings or the recognition proceedings under Chapter 15 of the United States Bankruptcy Code are dismissed or converted to a liquidation proceeding, including a receivership, bankruptcy, proceeding under Chapter 7 of the United States Bankruptcy Code or otherwise.

31.     **THIS COURT ORDERS** that the Monitor shall provide a report on the value of the Priority Commodity/ISO Obligations as of the last day of each calendar month by posting such report on the Monitor's Website (as defined below) within three (3) Business Days of such calendar month end.

**PROCEEDINGS AGAINST DIRECTORS AND OFFICERS**

32.     **THIS COURT ORDERS** that during the Stay Period, and except as permitted by subsection 11.03(2) of the CCAA, no Proceeding may be commenced or continued against any of the former, current or future directors or officers of the Just Energy Entities with respect to any claim against the directors or officers that arose before the date hereof and that relates to any obligations of the Just Energy Entities whereby the directors or officers are alleged under any law to be liable in their capacity as directors or officers for the payment or performance of such obligations, until a compromise or arrangement in respect of the Just Energy Entities, if one is filed, is sanctioned by this Court or is refused by the creditors of the Just Energy Entities or this Court.

**DIRECTORS' AND OFFICERS' INDEMNIFICATION AND CHARGE**

33.     **THIS COURT ORDERS** that each of the Just Energy Entities shall jointly and severally indemnify their respective directors and officers against obligations and liabilities that they may incur as directors or officers of the Just Energy Entities after the commencement of the within proceedings, except to the extent that, with respect to any officer or director, the obligation or liability was incurred as a result of the director's or officer's gross negligence or wilful misconduct.

34.     **THIS COURT ORDERS** that the directors and officers of the Just Energy Entities shall be entitled to the benefit of and are hereby granted a charge (the "**Directors' Charge**") on the Property, which charge shall not exceed an aggregate amount of C$44,100,000, as security for the indemnity provided in paragraph 33 of this Order. The Directors' Charge shall have the priority set out in paragraphs 53-55 herein.

35.     **THIS COURT ORDERS** that, notwithstanding any language in any applicable insurance policy to the contrary, (i) no insurer shall be entitled to be subrogated to or claim the benefit of the Directors' Charge, and (ii) the Just Energy Entities' directors and officers shall only be entitled to the benefit of the Directors' Charge to the extent that they do not have coverage under any directors' and officers' insurance policy, or to the extent that such coverage is insufficient to pay amounts indemnified in accordance with paragraph 33.

**APPOINTMENT OF MONITOR**

36.    **THIS COURT ORDERS** that FTI is hereby appointed pursuant to the CCAA as the Monitor, an officer of this Court, to monitor the business and financial affairs of the Just Energy Entities with the powers and obligations set out in the CCAA or set forth herein and that the Just Energy Entities and their shareholders, officers, directors, and Assistants shall advise the Monitor of all material steps taken by the Just Energy Entities pursuant to this Order, and shall co-operate fully with the Monitor in the exercise of its powers and discharge of its obligations and provide the Monitor with the assistance that is necessary to enable the Monitor to adequately carry out the Monitor's functions.

37.    **THIS COURT ORDERS** that the Monitor, in addition to its prescribed rights and obligations under the CCAA, is hereby directed and empowered to:

(a)    monitor the Just Energy Entities' receipts and disbursements;

(b)    report to this Court at such times and intervals as the Monitor may deem appropriate with respect to matters relating to the Property, the Business, and such other matters as may be relevant to the proceedings herein;

(c)    assist the Just Energy Entities, to the extent required by the Just Energy Entities, in their dissemination to the DIP Agent, the DIP Lenders and their counsel of financial and other information in accordance with the Definitive Documents;

(d)    advise the Just Energy Entities in their preparation of the Just Energy Entities' cash flow statements and reporting required by the DIP Agent and DIP Lenders, which information shall be reviewed with the Monitor and delivered to the DIP Agent and DIP Lenders and their counsel in accordance with the Definitive Documents;

(e)    advise the Just Energy Entities in their development of a Plan and any amendments to a Plan;

(f)    assist the Just Energy Entities, to the extent required by the Just Energy Entities, with the holding and administering of creditors' or shareholders' meeting for voting on the Plan;

17

(g) have full and complete access to the Property, including the premises, books, records, data, including data in electronic form, and other financial documents of the Just Energy Entities, wherever located and to the extent that is necessary to adequately assess the Just Energy Entities' business and financial affairs or to perform its duties arising under this Order;

(h) be at liberty to engage independent legal counsel or such other persons as the Monitor deems necessary or advisable respecting the exercise of its powers and performance of its obligations under this Order; and

(i) perform such other duties as are required by this Order or by this Court from time to time.

38. **THIS COURT ORDERS** that the Monitor shall not take possession of the Property and shall take no part whatsoever in the management or supervision of the management of the Business and shall not, by fulfilling its obligations hereunder, be deemed to have taken or maintained possession or control of the Business or Property, or any part thereof.

39. **THIS COURT ORDERS** that nothing herein contained shall require the Monitor to occupy or to take control, care, charge, possession or management (separately and/or collectively, "**Possession**") of any of the Property that might be environmentally contaminated, might be a pollutant or a contaminant, or might cause or contribute to a spill, discharge, release or deposit of a substance contrary to any federal, provincial or other law respecting the protection, conservation, enhancement, remediation or rehabilitation of the environment or relating to the disposal of waste or other contamination including, without limitation, the *Canadian Environmental Protection Act*, the Ontario *Environmental Protection Act*, the *Ontario Water Resources Act*, or the Ontario *Occupational Health and Safety Act* and regulations thereunder (the "**Environmental Legislation**"), provided however that nothing herein shall exempt the Monitor from any duty to report or make disclosure imposed by applicable Environmental Legislation. The Monitor shall not, as a result of this Order or anything done in pursuance of the Monitor's duties and powers under this Order, be deemed to be in Possession of any of the Property within the meaning of any Environmental Legislation, unless it is actually in possession.

40.     **THIS COURT ORDERS** that the Monitor shall provide any creditor of the Just Energy Entities and the DIP Agent and the DIP Lenders with information provided by the Just Energy Entities in response to reasonable requests for information made in writing by such creditor addressed to the Monitor. The Monitor shall not have any responsibility or liability with respect to the information disseminated by it pursuant to this paragraph. In the case of information that the Monitor has been advised by the Just Energy Entities is confidential, the Monitor shall not provide such information to creditors unless otherwise directed by this Court or on such terms as the Monitor and the Applicant may agree.

41.     **THIS COURT ORDERS** that, in addition to the rights and protections afforded the Monitor under the CCAA or as an officer of this Court, the Monitor shall incur no liability or obligation as a result of its appointment or the carrying out of the provisions of this Order, save and except for any gross negligence or wilful misconduct on its part. Nothing in this Order shall derogate from the protections afforded the Monitor by the CCAA or any applicable legislation.

42.     **THIS COURT ORDERS** that the Monitor, counsel to the Monitor (including both U.S. and Canadian counsel for all purposes of this Order), and counsel to the Just Energy Entities (including both U.S. and Canadian counsel for all purposes of this Order) shall be paid their reasonable fees and disbursements, in each case at their standard rates and charges, whether incurred prior to, on, or subsequent to the date of this Order, by the Just Energy Entities as part of the costs of these proceedings. The Just Energy Entities are hereby authorized and directed to pay the accounts of the Monitor, counsel to the Monitor, and the Just Energy Entities' counsel on a weekly basis.

43.     **THIS COURT ORDERS** that the Monitor and its legal counsel shall pass their accounts from time to time, and for this purpose the accounts of the Monitor and its legal counsel are hereby referred to a judge of the Commercial List of the Ontario Superior Court of Justice.

**ADMINISTRATION CHARGE**

44.     **THIS COURT ORDERS** that the Monitor, counsel to the Monitor and counsel to the Just Energy Entities shall be entitled to the benefit of and are hereby granted a charge (the "**Administration Charge**") on the Property, which charge shall not exceed an aggregate amount of C$3,000,000 as security for their professional fees and disbursements incurred at their standard

rates and charges, both before and after the making of this Order in respect of these proceedings. The Administration Charge shall have the priority set out in paragraphs 53-55 herein.

**DIP FINANCING**

45.      **THIS COURT ORDERS** that the Just Energy Entities are hereby authorized and empowered to obtain and borrow or guarantee, as applicable, pursuant a credit facility from the DIP Agent and the DIP Lenders in order to finance the Just Energy Entities' working capital requirements and other general corporate purposes, all in accordance with the Cash Flow Statements (as defined in the DIP Term Sheet) and Definitive Documents, provided that borrowings under such credit facility shall not exceed US$125,000,000 unless permitted by further Order of this Court.

46.      **THIS COURT ORDERS** that such credit facility shall be on the terms and subject to the conditions set forth in the CCAA Interim Debtor-in-Possession Financing Term Sheet between the Just Energy Entities, the DIP Agent and the DIP Lenders dated as of March 9, 2021 and attached as Appendix "DD" to the First Carter Affidavit (as may be amended or amended and restated from time to time, the "**DIP Term Sheet**").

47.      **THIS COURT ORDERS** that the Just Energy Entities are hereby authorized and empowered to execute and deliver such mortgages, charges, hypothecs and security documents, guarantees and other definitive documents (collectively with the DIP Term Sheet and the Cash Flow Statements, the "**Definitive Documents**"), as are contemplated by the DIP Term Sheet or as may be reasonably required by the DIP Agent and the DIP Lenders pursuant to the terms thereof, and the Just Energy Entities are hereby authorized and directed to pay and perform all of the indebtedness, interest, fees, liabilities and obligations to the DIP Agent and the DIP Lenders under and pursuant to the Definitive Documents as and when the same become due and are to be performed, notwithstanding any other provision of this Order. Notwithstanding any other provision in this Order, all payments and other expenditures to be made by any of the Just Energy Entities to any Person (except the Monitor and its counsel) shall be in accordance with the terms of the Definitive Documents, including in respect of payments in satisfaction of Priority Commodity/ISO Obligations.

48.     **THIS COURT ORDERS** that the DIP Agent and the DIP Lenders shall be entitled to the benefit of and are hereby granted a charge (the "**DIP Lenders' Charge**") on the Property, which DIP Lenders' Charge shall not secure an obligation that exists before this Order is made.  The DIP Lenders' Charge shall have the priority set out in paragraphs  53-55 hereof.

49.     **THIS COURT ORDERS** that, notwithstanding any other provision of this Order:

(a)     the DIP Agent on behalf of the DIP Lenders may take such steps from time to time as it may deem necessary or appropriate to file, register, record or perfect the DIP Lenders' Charge or any of the Definitive Documents;

(b)     upon the occurrence of an event of default under any of the Definitive Documents or the DIP Lenders' Charge, the DIP Agent or the DIP Lenders, as applicable, may immediately cease making advances or providing any credit to the Just Energy Entities and shall be permitted to set off and/or consolidate any amounts owing by the DIP Agent or the DIP Lenders to the Just Energy Entities against the obligations of the Just Energy Entities to the DIP Agent and the DIP Lenders under the Definitive Documents or the DIP Lenders' Charge, make demand, accelerate payment and give other notices with respect to the obligations of the Just Energy Entities to the DIP Agent or the DIP Lenders under the Definitive Documents or the DIP Lenders' Charge, or to apply to this Court on five (5) days' notice to the Just Energy Entities, the Monitor and the Service List to seek the Court's authorization to exercise any and all of its other rights and remedies against the Just Energy Entities or the Property under or pursuant to the Definitive Documents and the DIP Lenders' Charge, including without limitation, for the appointment of a receiver, receiver and manager or interim receiver, or for a bankruptcy order against the Just Energy Entities and for the appointment of a trustee in bankruptcy of the Just Energy Entities; and

(c)     the foregoing rights and remedies of the DIP Agent and the DIP Lenders shall be enforceable against any trustee in bankruptcy, interim receiver, receiver or receiver and manager of the Just Energy Entities or the Property.

50.     **THIS COURT ORDERS AND DECLARES** that the DIP Agent, the DIP Lenders, the Qualified Commodity/ISO Suppliers and the Cash Management Banks shall be treated as

unaffected in any Plan filed by the Applicants or any of them under the CCAA, or any proposal filed by the Applicants or any of them under the *Bankruptcy and Insolvency Act* of Canada (the "**BIA**"), with respect to any advances made under the Definitive Documents, the Priority Commodity/ISO Obligations or the Cash Management Obligations, as applicable.

**APPROVAL OF FINANCIAL ADVISOR AGREEMENT**

51.     **THIS COURT ORDERS** that the agreement dated February 20, 2021 engaging BMO Nesbitt Burns Inc. (the "**Financial Advisor**") as financial advisor to the Just Energy Entities and attached as Confidential Appendix "FF" to the First Carter Affidavit (the "**Financial Advisor Agreement**"), and the retention of the Financial Advisor under the terms thereof, is hereby ratified and approved and the Just Energy Entities are authorized and directed *nunc pro tunc* to make the payments contemplated thereunder in accordance with the terms and conditions of the Financial Advisor Agreement.

52.     **THIS COURT ORDERS** that the Financial Advisor shall be entitled to the benefit of and is hereby granted a charge (the "**FA Charge**") on the Property, which charge shall not exceed an aggregate amount of C$8,600,000 as security for the fees and disbursements and other amounts payable under the Financial Advisor Agreement, both before and after the making of this Order in respect of these proceedings. The FA Charge shall have the priority set out in paragraphs  53-55 herein.

**VALIDITY AND PRIORITY OF CHARGES CREATED BY THIS ORDER**

53.     **THIS COURT ORDERS** that the priorities of the Administration Charge, the FA Charge, the Directors' Charge, the KERP Charge, the DIP Lenders' Charge, the Priority Commodity/ISO Charge and the Cash Management Charge, as among them, shall be as follows:

> First – Administration Charge and FA Charge (to the maximum amount of C$3,000,000 and C$8,600,000, respectively), on a *pari passu* basis;
>
> Second – Directors' Charge (to the maximum amount of C$44,100,000);
>
> Third – KERP Charge (to the maximum amounts of C$2,012,100 and US$3,876,024);

Fourth – DIP Lenders' Charge (to the maximum amount of the Obligations (as defined in the DIP Term Sheet) owing thereunder at the relevant time) and the Priority Commodity/ISO Charge, on a *pari passu* basis; and

Fifth – Cash Management Charge.

54.     **THIS COURT ORDERS** that the filing, registration or perfection of the Administration Charge, the FA Charge, the Directors' Charge, the KERP Charge, the DIP Lenders' Charge, the Priority Commodity/ISO Charge or the Cash Management Charge (collectively, the "**Charges**") shall not be required, and that the Charges shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered, recorded or perfected subsequent to the Charges coming into existence, notwithstanding any such failure to file, register, record or perfect.

55.     **THIS COURT ORDERS** that, subject to paragraph 9, each of the Charges shall constitute a charge on the Property and such Charges shall rank in priority to all other security interests, trusts, liens, charges and encumbrances, claims of secured creditors, statutory or otherwise (collectively, "**Encumbrances**") in favour of any Person (including those commodity suppliers listed in Schedule "A" hereto).

56.     **THIS COURT ORDERS** that except as otherwise expressly provided for herein, or as may be approved by this Court on notice to parties in interest, the Just Energy Entities shall not grant any Encumbrances over any Property that rank in priority to, or *pari passu* with, any of the Charges unless the Just Energy Entities also obtain the prior written consent of the Monitor, the DIP Agent on behalf of the DIP Lenders and the beneficiaries of the Administration Charge, the FA Charge, the Directors' Charge, the KERP Charge, the Priority Commodity/ISO Charge and the Cash Management Charge, or further Order of this Court.

57.     **THIS COURT ORDERS** that the Charges, the agreements and other documents governing or otherwise relating to the obligations secured by the Charges, and the Definitive Documents shall not be rendered invalid or unenforceable and the rights and remedies of the chargees entitled to the benefit of the Charges (collectively, the "**Chargees**") and/or the DIP Agent or the DIP Lenders thereunder shall not otherwise be limited or impaired in any way by (a) the pendency of these proceedings and the declarations of insolvency made herein; (b) any application(s) for bankruptcy order(s) issued pursuant to BIA, or any bankruptcy order made

pursuant to such applications; (c) the filing of any assignments for the general benefit of creditors made pursuant to the BIA; (d) the provisions of any federal or provincial statutes; or (e) any negative covenants, prohibitions or other similar provisions with respect to borrowings, incurring debt or the creation of Encumbrances, contained in any existing loan document, lease, sublease, offer to lease or other agreement (collectively, an "**Agreement**") which binds any of the Just Energy Entities and notwithstanding any provision to the contrary in any Agreement:

(a)     neither the creation of the Charges nor the execution, delivery, perfection, registration or performance of the Definitive Documents shall create or be deemed to constitute a breach by any Just Energy Entity of any Agreement to which it is a party;

(b)     none of the Chargees shall have any liability to any Person whatsoever as a result of any breach of any Agreement caused by or resulting from the Just Energy Entities entering into the DIP Term Sheet, the creation of the Charges or the execution, delivery or performance of any of the other Definitive Documents; and

(c)     the payments made by the Just Energy Entities pursuant to this Order or the Definitive Documents, and the granting of the Charges, do not and will not constitute preferences, fraudulent conveyances, transfers at undervalue, oppressive conduct, or other challengeable or voidable transactions under any applicable law.

58.     **THIS COURT ORDERS** that any Charge created by this Order over leases of real property in Canada shall only be a Charge in the Just Energy Entities' interest in such real property leases.

## SERVICE AND NOTICE

59.     **THIS COURT ORDERS** that the Monitor shall (i) without delay, publish in The Globe and Mail (National Edition) and the Wall Street Journal a notice containing the information prescribed under the CCAA, (ii) within five days after the date of this Order, (A) make this Order publicly available in the manner prescribed under the CCAA, (B) send, or cause to be sent, in the prescribed manner or by electronic message to the e-mail addresses as last shown on the records of the Just Energy Entities, a notice to every known creditor who has a claim against the Just Energy Entities of more than $1,000, and (C) prepare a list showing the names and addresses of those creditors and the estimated amounts of those claims, and make it publicly available in the

prescribed manner, all in accordance with Section 23(1)(a) of the CCAA and the regulations made thereunder, provided that the Monitor shall not make the claims, names and addresses of the individuals who are creditors publicly available.

60.     **THIS COURT ORDERS** that the Monitor shall create, maintain and update as necessary a list of all Persons appearing in person or by counsel in this proceeding (the "**Service List**"). The Monitor shall post the Service List, as may be updated from time to time, on the Monitor's website as part of the public materials to be recorded thereon in relation to this proceeding. Notwithstanding the foregoing, the Monitor shall haven no liability in respect of the accuracy of or the timeliness of making any changes to the Service List.

61.     **THIS COURT ORDERS** that the E-Service Protocol of the Commercial List (the "**Protocol**") is approved and adopted by reference herein and, in this proceeding, the service of documents made in accordance with the Protocol (which can be found on the Commercial List website at http://www.ontariocourts.ca//scj/practice/practice-directions/toronto/eservice-commercial/) shall be valid and effective service. Subject to Rule 17.05 this Order shall constitute an order for substituted service pursuant to Rule 16.04 of the Rules of Civil Procedure. Subject to Rule 3.01(d) of the Rules of Civil Procedure and paragraph 21 of the Protocol, service of documents in accordance with the Protocol will be effective on transmission. This Court further orders that a Case Website shall be established in accordance with the Protocol with the following URL - http://cfcanada.fticonsulting.com/justenergy (the "**Monitor's Website**").

62.     **THIS COURT ORDERS** that the Just Energy Entities, the DIP Agent or the DIP Lenders and the Monitor and their respective counsel are at liberty to serve or distribute this Order, any other materials and orders as may be reasonably required in these proceedings, including any notices, or other correspondence, by forwarding true copies thereof by prepaid ordinary mail, courier, personal deliver, facsimile or other electronic transmission to the Just Energy Entities' creditors or other interested parties and their advisors and that any such service, distribution or notice shall be deemed to be received: (a) if sent by courier, on the next business day following the date of forwarding thereof, (b) if delivered by personal delivery or facsimile or other electronic transmission, on the day so delivered, and (c) if sent by ordinary mail, on the third business day after mailing. For greater certainty, any such distribution or service shall be deemed to be in

satisfaction of a legal or judicial obligation, and notice requirements within the meaning of clause 3(c) of the *Electronic Commerce Protection Regulations*, Reg. 81000-2-175 (SOR/DORS).

**FOREIGN PROCEEDINGS**

63.    **THIS COURT ORDERS** that the Applicant, Just Energy Group Inc. ("**JEGI**") is hereby authorized and empowered, but not required, to act as the foreign representative (in such capacity, the "**Foreign Representative**") in respect of the within proceedings for the purpose of having these proceedings recognized and approved in a jurisdiction outside of Canada.

64.    **THIS COURT ORDERS** that the Foreign Representative is hereby authorized to apply for foreign recognition and approval of these proceedings, as necessary, in any jurisdiction outside of Canada, including in the United States pursuant to chapter 15 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

**GENERAL**

65.    **THIS COURT ORDERS** that any interested party may apply to this Court to amend or vary this Order on not less than seven (7) days' notice to any other party or parties likely to be affected by the Order sought or upon such other notice, if any, as this Court may order; provided, however, that the Chargees, the DIP Agent and the DIP Lenders shall be entitled to rely on this Order as issued and entered and on the Charges and priorities set out in paragraphs 53-55 hereof, including with respect to any fees, expenses and disbursements incurred and in respect of advances made under the Definitive Documents or pursuant to the Qualified Support Agreement, as applicable, until the date this Order may be amended, varied or stayed. For the avoidance of doubt (i) no payment in respect of any obligations secured by the Priority Commodity/ISO Charge or the Cash Management Charge or made to the CA Lenders pursuant to the Lender Support Agreement, and (ii) none of the Authorized Cash Collateral, shall be subject to the terms of any intercreditor agreement, including any "turnover" or "waterfall" provision(s) therein.

66.    **THIS COURT ORDERS** that, notwithstanding paragraph 65 of this Order, the Just Energy Entities or the Monitor may from time to time apply to this Court to amend, vary or supplement this Order or for advice and directions in the discharge of their powers and duties under this Order or in the interpretation or application of this Order.

67.    **THIS COURT ORDERS** that nothing in this Order shall prevent the Monitor from acting as an interim receiver, a receiver, a receiver and manager, or a trustee in bankruptcy of the Just Energy Entities, the Business or the Property.

68.    **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal, regulatory or administrative body or agency having jurisdiction in Canada or in the United States, to give effect to this Order and to assist the Just Energy Entities, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies and agencies are hereby respectfully requested to make such orders and to provide such assistance to the Just Energy Entities and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to JEGI, in any foreign proceeding, or to assist the Just Energy Entities and the Monitor and their respective agents in carrying out the terms of this Order.

69.    **THIS COURT ORDERS** that each of the Just Energy Entities and the Monitor be at liberty and are hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body or agency, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order, and that JEGI is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada.

70.    **THIS COURT ORDERS** that Confidential Appendices "FF" and "GG" to the First Carter Affidavit and Confidential Appendix "Q" to the Second Carter Affidavit shall be and are hereby sealed, kept confidential and shall not form part of the public record pending further Order of this Court.

71.    **THIS COURT ORDERS** that this Order and all of its provisions are effective as of 12:01 a.m. Eastern Standard/Daylight Time on the date of this Order.



_____

**SCHEDULE "A"**

**JE Partnerships**

**Partnerships:**

- JUST ENERGY ONTARIO L.P.

- JUST ENERGY MANITOBA L.P.

- JUST ENERGY (B.C.) LIMITED PARTNERSHIP

- JUST ENERGY QUÉBEC L.P.

- JUST ENERGY TRADING L.P.

- JUST ENERGY ALBERTA L.P.

- JUST GREEN L.P.

- JUST ENERGY PRAIRIES L.P.

- JEBPO SERVICES LLP

- JUST ENERGY TEXAS LP

**Commodity Suppliers:**

- EXELON GENERATION COMPANY, LLC

- BRUCE POWER L.P.

- SOCIÉTÉ GÉNÉRALE

- EDF TRADING NORTH AMERICA, LLC

- NEXTERA ENERGY POWER MARKETING, LLC

- MACQUARIE BANK LIMITED

- MACQUARIE ENERGY CANADA LTD.

- MACQUARIE ENERGY LLC

- MORGAN STANLEY CAPITAL GROUP

- BP CANADA ENERGY MARKETING CORP.

- BP ENERGY COMPANY

- BP CORPORATION NORTH AMERICA INC.

- BP CANADA ENERGY GROUP ULC

- SHELL ENERGY NORTH AMERICA (CANADA) INC.

- SHELL ENERGY NORTH AMERICA (US), L.P.

## SCHEDULE "B"

## DEFINITIONS

"**Commodity Agreement**" means a gas supply agreement, electricity supply agreement or other agreement with any Just Energy Entity for the physical or financial purchase, sale, trading or hedging of natural gas, electricity or environmental derivative products, or contracts entered into for protection against fluctuations in foreign currency exchange rates, which shall include any master power purchase and sale agreement, base contract for sale and purchase, ISDA master agreement or similar agreement.

"**ISO Agreement**" means an agreement pursuant to which a Just Energy Entity has reimbursement obligations to a counterparty for payments made by such counterparty on behalf of such Just Energy Entity to an independent system operator that coordinates, controls and monitors the operation of an electrical power system, and includes all agreements related thereto.

"**Lender Support Agreement**" means that certain Accommodation and Support Agreement dated as of March 18, 2021 and attached as Exhibit "A" to the Third Carter Affidavit, among the CA Agent, the CA Lenders and the Just Energy Entities, which agreement shall not be amended, restated or modified in any manner without the consent of the majority of the DIP Lenders and the Monitor.

"**Priority Commodity/ISO Obligation**" means amounts that are due and payable, at the applicable time, for: (i)(A) the physical supply of electricity or gas that has been delivered on or after March 9, 2021; (B) financial settlements on or after March 9, 2021; and (C) amounts owing under a confirmation or transaction that was executed on or after March 9, 2021 pursuant to a Commodity Agreement as a result of the termination thereof in accordance with the applicable Qualified Support Agreement; and (ii) for services actually delivered by a Qualified Commodity/ISO Supplier on or after March 9, 2021 pursuant to an ISO Agreement (but for greater certainty, excluding any amount owing for ISO services provided under an ISO Agreement on or before the date of this Order, whether or not yet due).

"**Qualified Commodity/ISO Supplier**" means any counterparty to a Commodity Agreement or ISO Agreement that has executed or executes a Qualified Support Agreement with a Just Energy Entity and refrained from exercising any available termination rights, under the Commodity

Agreement as a result of the commencement of the Proceedings absent an event of default under such Qualified Support Agreement.

"**Qualified Support Agreement**" means a support agreement between a Just Energy Entity and a counterparty to a Commodity Agreement, in form and substance satisfactory to the Just Energy Entities and the DIP Lenders, acting reasonably, which includes, among other things: (i) that such counterparty shall apply to the Court on five (5) days' notice to the Just Energy Entities, the Monitor and the Service List prior to exercising any termination rights under a Qualified Support Agreement, except as expressly provided for herein; (ii) the obligation to supply physical and financial power and natural gas and other related services pursuant to any confirmations or transactions executed pursuant to a Commodity Agreement; and (iii) an agreement to refrain from exercising termination rights as a result of the commencement of these proceedings absent an event of default under such support agreement.

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, C. C-36, AS AMENDED

Court File No:  CV-21-00658423-00CL

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF JUST ENERGY GROUP INC., et al (collectively, the "**Applicants**")

|  | *Ontario*<br>**SUPERIOR COURT OF JUSTICE**<br>**COMMERCIAL LIST**<br><br>Proceeding commenced at Toronto |
|---|---|
|  | **SECOND AMENDED & RESTATED INITIAL ORDER** |
|  | **OSLER, HOSKIN & HARCOURT, LLP**<br>P.O. Box 50, 1 First Canadian Place<br>Toronto, ON M5X 1B8<br><br>Marc Wasserman (LSO# 44066M)<br>Michael De Lellis (LSO# 48038U)<br>Jeremy Dacks (LSO# 41851R)<br><br>Tel: (416) 362-2111<br>Fax: (416) 862-6666<br><br>Lawyers for the Applicants |

**<u>Exhibit C</u>**

**Stay Extension Order**

Court File No. CV-21-00658423-00CL

**ONTARIO**

**SUPERIOR COURT OF JUSTICE**

**COMMERCIAL LIST**

| | | |
|---|---|---|
| THE HONOURABLE MR. | ) | WEDNESDAY, THE 26TH |
| | ) | |
| JUSTICE KOEHNEN | ) | DAY OF MAY, 2021 |



IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, c. C-36, AS AMENDED

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF JUST ENERGY GROUP INC., JUST ENERGY CORP., ONTARIO ENERGY COMMODITIES INC., UNIVERSAL ENERGY CORPORATION, JUST ENERGY FINANCE CANADA ULC, HUDSON ENERGY CANADA CORP., JUST MANAGEMENT CORP., JUST ENERGY FINANCE HOLDING INC., 11929747 CANADA INC., 12175592 CANADA INC., JE SERVICES HOLDCO I INC., JE SERVICES HOLDCO II INC., 8704104 CANADA INC., JUST ENERGY ADVANCED SOLUTIONS CORP., JUST ENERGY (U.S.) CORP., JUST ENERGY ILLINOIS CORP., JUST ENERGY INDIANA CORP., JUST ENERGY MASSACHUSETTS CORP., JUST ENERGY NEW YORK CORP., JUST ENERGY TEXAS I CORP., JUST ENERGY, LLC, JUST ENERGY PENNSYLVANIA CORP., JUST ENERGY MICHIGAN CORP., JUST ENERGY SOLUTIONS INC., HUDSON ENERGY SERVICES LLC, HUDSON ENERGY CORP., INTERACTIVE ENERGY GROUP LLC, HUDSON PARENT HOLDINGS LLC, DRAG MARKETING LLC, JUST ENERGY ADVANCED SOLUTIONS LLC, FULCRUM RETAIL ENERGY LLC, FULCRUM RETAIL HOLDINGS LLC, TARA ENERGY, LLC, JUST ENERGY MARKETING CORP., JUST ENERGY CONNECTICUT CORP., JUST ENERGY LIMITED, JUST SOLAR HOLDINGS CORP. AND JUST ENERGY   (FINANCE) HUNGARY ZRT. (each, an "**Applicant**", and collectively, the "**Applicants**")

**ORDER**

**(Stay Extension & Other Relief)**

**THIS MOTION**, made by the Applicants pursuant to the *Companies' Creditors Arrangement Act*, R.S.C. 1985, c. C-36, as amended (the "**CCAA**"), for an order extending the Stay Period (defined below) and other relief, was heard this day by judicial video conference via Zoom in Toronto, Ontario due to the COVID-19 pandemic.

2

**ON READING** the Notice of Motion of the Applicants, the Affidavit of Michael Carter sworn May 19, 2021 including the exhibits thereto, the Second Report of FTI Consulting Canada Inc., in its capacity as monitor (the "**Monitor**"), filed (the "**Second Report**"), and on hearing the submissions of respective counsel for the Applicants, the Monitor, and such other counsel as were present, no one else appearing although duly served as appears from the Affidavits of Service of Emily Paplawski and Ana Chalupa, affirmed May 19, 20, 21 and 25, 2021, filed:

## SERVICE

1.      **THIS COURT ORDERS** that the time for service of the Notice of Motion and the Motion Record herein is hereby abridged and validated so that this Motion is properly returnable today and hereby dispenses with further service thereof.

## EXTENSION OF THE STAY PERIOD

2.      **THIS COURT ORDERS** that the Stay Period (as defined in paragraph 17 of the Amended and Restated Initial Order dated March 19, 2021 (the "**ARIO**")) is hereby extended until and including September 30, 2021.

## ANNUAL MEETING OF SHAREHOLDERS

3.      **THIS COURT ORDERS** that Just Energy Group Inc. ("**Just Energy**") be and is hereby relieved of any obligation to call and hold an annual meeting of its shareholders until further Order of the Court.

## INTERCOMPANY PAYMENTS

4.      **THIS COURT ORDERS** that Just Energy (U.S.) Corp. ("**Just Energy U.S.**") is authorized, but not required, subject to the Definitive Documents (as defined in the ARIO), to repatriate funds to the Just Energy Entities (as defined in the preamble to the ARIO) operating in

3

Canada (the "**Canadian Just Energy Entities**") to ensure sufficient working capital is held by the Canadian Just Energy Entities to fund their ongoing operations during these CCAA proceedings. Such repatriation of funds may proceed by means of a repayment of certain intercompany indebtedness, including interest, by: (a) Just Energy U.S. to Just Energy (Finance) Hungary ZRT ("**Just Energy Hungary**") pursuant to, and in partial satisfaction of, one or more intercompany loans advanced by Just Energy Hungary to Just Energy U.S.; and (b) by Just Energy Hungary to Just Energy Finance Holdings Inc ("**JE Finance**") pursuant to, and in partial satisfaction of, a convertible, non-interest bearing loan, payable on demand, advanced by JE Finance to Just Energy Hungary.

**APPROVAL OF MONITOR'S REPORTS**

5.      **THIS COURT ORDERS** that the activities and conduct of the Monitor prior to the date hereof in relation to the Applicants and these CCAA proceedings are hereby ratified and approved.

6.      **THIS COURT ORDERS** that the Pre-Filing Report of the Proposed Monitor dated March 9, 2021, the First Report of the Monitor dated March 18, 2021 and the Second Report be and are hereby approved.

7.      **THIS COURT ORDERS** that only the Monitor, in its personal capacity and only with respect to its own personal liability, shall be entitled to rely upon or utilize in any way the approvals set forth in paragraphs 5 and 6 of this Order.

**GENERAL**

8.      **THIS COURT ORDERS** that this Order shall have full force and effect in all provinces and territories in Canada.

9.      **THIS COURT HEREBY REQUESTS** the aid and recognition of any court, tribunal,

4

regulatory or administrative body, having jurisdiction in Canada or in the United States of America, to give effect to this Order and to assist the Applicants, the Monitor and their respective agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants and to the Monitor, as an officer of this Court, as may be necessary or desirable to give effect to this Order, to grant representative status to the Monitor in any foreign proceeding, or to assist the Applicants and the Monitor and their respective agents in carrying out the terms of this Order.

_____

IN THE MATTER OF THE *COMPANIES' CREDITORS ARRANGEMENT ACT*, R.S.C. 1985, C. C-36, AS AMENDED

Court File No:  CV-21-00658423-00CL

AND IN THE MATTER OF A PLAN OF COMPROMISE OR ARRANGEMENT OF JUST ENERGY GROUP INC., et al (collectively, the "**Applicants**")

| | |
|---|---|
| | ***Ontario***<br>**SUPERIOR COURT OF JUSTICE**<br>**COMMERCIAL LIST**<br><br>Proceeding commenced at Toronto |
| | **ORDER**<br>**(Stay Extension & Other Relief)** |
| | **OSLER, HOSKIN & HARCOURT, LLP**<br>P.O. Box 50, 1 First Canadian Place<br>Toronto, ON M5X 1B8<br><br>Marc Wasserman (LSO# 44066M)<br>Michael De Lellis (LSO# 48038U)<br>Jeremy Dacks (LSO# 41851R)<br><br>Tel: (416) 362-2111<br>Fax: (416) 862-6666<br><br>Lawyers for the Applicants |

## **Exhibit D**

**Stay Extension Endorsement**

**De Sousa, Sierra**

| | |
|---|---|
| **From:** | Koehnen, Mr. Justice Markus (SCJ) <Markus.Koehnen@scj-csj.ca> |
| **Sent:** | Wednesday, May 26, 2021 9:01 AM |
| **To:** | Erickson, Justine; JUS-G-MAG-CSD-Toronto-SCJ Commercial List; Wasserman, Marc; Dacks, Jeremy; Robert Thornton |
| **Subject:** | Re: In the Matter of Just Energy Group Inc. et al - Court File No. CV-21-00658423-00CL |
| **Attachments:** | JE - 2nd ARIO 20210526.pdf; JE - Stay Extension 20210526.pdf |

**Email Endorsement**

1. Just Energy seeks four forms of relief today.  The relief is unopposed and is supported by the Monitor.

2. I have signed and attached two orders granting the relief sought.

3. The first form of relief is an  order extending the stay of proceedings to September 30, 2021.  I am satisfied that this is appropriate.  The business is complex and requires time to restructure.  It has adequate cash flow and financing to see itself through to September 30, 2021 and beyond.

4. The second form of relief is an order postponing the annual shareholder meeting.  Courts have made similar orders for such relief in a number of CCAA proceedings.  See for example: Re Cline Mining Corp ., 2014 ONSC 6998 at paras. 53-55 [Cline]; Re SkyLink Aviation Inc ., 2013 ONSC 1500 [Commercial List] at para. 29; Re Canwest Global Communications Corp. (2009), 59 C.B.R. (5th) 72 (Ont. Sup. Ct. [Commercial List]) at paras. 53-54 [Canwest]; Re Nortel Networks Corp ., [2009] O.J. No. 614 (Sup. Ct. [Commercial List]) at para. 8; Re Laidlaw Inc. (2002), 34 C.B.R. (4th) 72, (Ont. Sup. Ct. [Commercial List]) at para. 7 [Laidlaw]; Re Sears Canada Inc ., Initial Order. Court File No. CV-17-11846-00CL (Ont. Sup. Ct. [Commercial List]) at para. 54.

5. Postponing the AGM allows management to focus on restructuring rather than on a meeting of shareholders who are likely to have no economic interest in a company that is currently insolvent.

6. The third form of relief is an order authorizing intercompany payments.  Just Energy uses a centralized cash management system.  Loans exist between its Canadian, American, Hungarian and French entities. The order seeks permission to have the American entity repatriate funds as needed to the Canadian entity to be used as working capital to fund its ongoing operations.  Although there is no immediate need for funds within the Canadian entity, if and when such a need arises, the need will be immediate.

7. Although the DIP facility was advanced in the United States, all Just Energy entities are jointly and severally liable for the facility.  As a result, repatriation of funds from the American to the Canadian

entity cause no prejudice to the DIP lender.

8.   The fourth form of relief involves changes to various definitions in the initial order.

9.   Among other things, the changes enable Just Energy to broaden its supply sources, provide increased protection against currency exchange risk and allow new suppliers to terminate their supply agreements thereby incentivizing them to provide new supply without having Just Energy provide financial collateral.  These are all that legitimate business objectives which will help facilitate the ultimate resolution of the CCAA proceeding.

**Justice Markus Koehnen**
Ontario Superior Court of Justice
361 University Ave.
Toronto, Ont.
M5G 1T3
416-327-5284