## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 15 |
| JUST ENERGY GROUP INC.., *et al.,* | |
| Debtor in a Foreign Proceeding,[1] | Case No. 21-30823 (MI) |

### HURT JUDGMENT CREDITORS' (INDIVIDUAL AND AS CLASS REPRESENTATIVES) RESPONSE IN OPPOSITION TO DEBTORS' MOTION TO AUTHORIZE AND DIRECT TERMINATION OF SUPERSEDEAS BOND

Davina Hurt and Dominic Hill, individually and on behalf of those similarly situated class members (the "Hurt Judgment Creditors"), creditors and parties-in-interest as beneficiaries of the subject supersedeas bond, file this response to *Debtors' Motion to Authorize and Direct Termination of Supersedeas Bond* [Doc. 134] (the "Motion") in opposition of the relief requested. In support of their opposition, the Hurt Judgment Creditors would respectfully show as follows:

### INTRODUCTION

1.      The Debtors' (also referred to as "Just Energy" herein) request for termination of the supersedeas bond (the "Bond") posted to secure payment of the class action judgment entered in *Hurt, et al v. Commerce Energy, Inc., et al*, in the United States District Court for the Northern

---

[1] The identifying four digits of Debtor Just Energy Croup Inc.'s local Canada tax identification number are 0469.  Due to the large number of debtor entities in these chapter 15 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers are not provided herein.  A completed list of such information may be obtained on the website of the Debtors' claims and noticing agent at www.omniagentsolutions.com/justenergy.  The location of the Debtors' service address for purposes of these chapter 15 cases is:  100 King Street West, Suite 2360, Toronto, Ontario, ON, M5X 1E1.

District of Ohio (the "Ohio Court"), Case No. 1:12-CV-00758 (the "Hurt Action" or "Action")
should be denied.[2]

2.      The Bond constitutes an independent contract between the Hurt Judgment
Creditors, as beneficiaries, and Fidelity and Deposit Company of Maryland ("Fidelity"), as surety.
As the Bond is not an asset of the Debtors, modifications or alterations to, or release of, the Bond
are not within the Court's jurisdiction.  The relief sought does not constitute a core proceeding
under 28 U.S.C. § 157(b)(2), as it does involve a matter "arising under" or "arising in" a case under
title 11, nor is it one that is related to a case under title 11.  Thus, this Court does not have
jurisdiction to grant the relief sought.

3.      To the extent this Court concludes otherwise and holds that bankruptcy jurisdiction
does exist, the Ohio Court has concurrent jurisdiction over this matter. 28 U.S.C.  § 1334(b). The
Ohio Court, having presided over the Action and having approved the form and amount of Bond,
has continuing jurisdiction and authority over the Bond, and is the proper and appropriate forum
to consider and decide any and all issues relating to the Bond, especially whether its terms have
been satisfied to warrant its release.

4.      The Hurt Action is a decade-long class action. Of the Hurt Judgment Creditors'
class, approximately 300 class members have yet to receive payment on their respective
judgments, for an aggregate amount of approximately $1.4 Million. The Ohio Court, as fiduciary
to these class members, has continuing oversight and supervision of all payments and the operation
of the Bond which protects and secures payment to these class members as well as satisfaction of
that court's judgment.  For these reasons, this Court should defer to the Ohio Court or otherwise

---

[2]  The Action was brought, and the Judgment was rendered and entered, against Commerce Energy,
Inc. n/k/a Just Energy Solutions. Inc., Just Energy Group, Inc. and Just Energy Marketing Corp (hereinafter
collectively referred to as the "Judgment Debtors.").  The Judgment entered by the Ohio Court affords each
of the Hurt Judgment Creditors judgment for amounts stated in the Ohio Court's record.

abstain from considering the Motion, and deny the Motion, without prejudice to it being re-filed in the Ohio Court.

5.    In the event this Court determines it has jurisdiction to consider the merits of the Motion, the Hurt Judgment Creditors submit that it should be denied since (1) neither section 105 or 363 of the Bankruptcy Code affords Just Energy the relief sought, as the Bond does not constitute an asset or property of the Debtors and the Court's equitable powers under section 105 do not extend to the Bond itself, (2) it effectively discharges Fidelity, a non-debtor third party, of its obligations under the Bond in contravention of the Bankruptcy Code, and (3) the terms of the Bond have not been satisfied as the Bond's purpose remains outstanding. The Bond's terms do not permit its release or the release of Fidelity's obligations until the Judgment Debtor has satisfied the Judgment in full. Satisfaction in full of the Judgment has not occurred. There remain checks totaling approximately $1.4 Million uncashed leaving the Judgment unsatisfied as to 300 class members.  It is well established that payment by check does not occur until the funds are in the possession of the payee; that is, until the check is honored.

6.    The purpose of a supersedeas bond is to obligate ***the surety, and not the judgment debtor,*** to pay the judgment immediately upon failure of the judgment debtor's final appeal from the judgment.  This is why the bond is never an estate asset in bankruptcy, since payment is made by a non-debtor party.  The bond protects, in the nature of a security interest, the class members and their judgment. That is why, even in the event of bankruptcy of the original obligor (i.e. debtor), the bond is never released unless and until the judgment is fully paid.  Here, release of the Bond would place the un-paid class members in the position of unsecured creditors, contrary to the very purpose of the Bond. Therefore, if this Court decides it has jurisdiction to address the merits of the Motion, it should deny Debtors' request for release of the Bond.

## JURISDICTION AND VENUE

7.      The Hurt Judgment Creditors admit that the Court has subject matter jurisdiction over the Debtors' Chapter 15 case under 28 U.S.C. §§157(a) and 1334(a); however, they deny that the matter raised by the Motion constitutes a core proceeding under 28 U.S.C. §157(b) as it does not involve a matter "arising under" or "arising in" a case under title 11.  If the Court determines that the Motion involves a matter that is "related to" the Debtors' Chapter 15 ancillary cases for purposes of 28 U.S.C. §§157(c)(1), which the Hurt Judgment Creditors do not concede, the Hurt Judgment Creditors do not consent to the Court's entry of final orders or judgments.

8.      Venue of this proceeding is improper.  To the extent this proceeding is one arising in or related to a case under title 11, it is based on a claim arising after the commencement of Debtors' Chapter 15 case from the operation of the business of the Debtors; thus, it was improperly commenced in this Court.  See 28 U.S.C. § 1409(d).

9.      The relief sought is effectively one asserting a claim for specific performance or declaratory judgment.  Such relief requires commencement of an adversary proceeding. See Bankruptcy Rule 7001, defining adversary proceeding to include those seeking, amongst others, to (i) "determine other interest[s] in property" [Rule 7001(2)], (ii) "to obtain an injunction or other equitable relief" [Rule 7001(7)], and (iii) "to obtain a declaratory judgment relating to" other matters described in the rule [Rule 7001(9)].  As the relief sought is by a contested matter, the Motion is procedurally improper.[3]

---

[3]  See *First River Energy v. U.S. Energy Dev. Corp*. 986 F.3d 914 n. 20. (5th Cir. 2021) (recognizing that a declaratory judgment action constitutes an adversary proceeding); *Krueger v. Torres (In re Krueger)*, 812 F.3d 365, 369 (5th Cir. 2016) (proceedings classified as adversary proceedings under Rule 7001 must be litigated as lawsuits).

## BACKGROUND

10.     As the Motion states, the Bond is an appeal bond *only* (supersedeas), securing a $5.6 Million judgment entered in the Action which amount includes the class members' individual damages, attorneys' fees, and post-judgment interest. Just Energy's Motion ¶¶ 4, 15, 22.  The Bond's terms obligate Fidelity to pay the Judgment amount, to the extent not already paid, upon the failure of the appeal(s) for which the Bond was taken. The unambiguous language of the bond agreement provides for Fidelity's obligation to "remain in full force and effect" until the Judgment is satisfied "in full." Bond and Ryder attached as Exhibit B to Just Energy's Motion. In contrast, the Debtors seek release of the Bond prior to its full satisfaction.

11.     All appeals have now been exhausted.  The Judgment has not been fully paid. While the Judgment Debtors have made partial payment on the Judgment, as of August 10, 2021, $1,414,503.93 has not been received by approximately 300 class members. Fiorelli Declaration, ¶¶ 6 and 7.[4] Although Debtors issued checks to these 300 individuals, the checks remain uncashed, have not expired, and likely will not until January 2022. *Id*.

12.     The $1.4 Million in uncashed checks – some for unpaid wages and some for liquidated damages -- are drawn on two separate accounts: one with the Debtors, and a separate account with the Debtors' payroll company ADP, see Just Energy's' Motion, ¶22. Rather than "refuse" to work with Debtors and their counsel, as is inaccurately alleged in Debtors' Motion (¶¶9, 10, 23, 24, 26), counsel specifically offered to reduce the Bond from $5.6 Million to $1.4 Million to account for the amounts paid and cashed, maintaining the Bond to secure *only* the

---

[4]  Counsel to the Hurt Judgment Creditors has not received a report from Debtors as to further checks that may have been cashed since August 10, 2020; as such, this amount may be somewhat lower.  See *Declaration of Nicole T. Fiorelli in Support of Hurt Judgment Creditors' (Individual and as Class Representatives) Response in Opposition to Debtors' Motion to Authorize Direct Termination and of Supersedeas Bond*, attached hereto as Exhibit A, which is incorporated herein by reference.

outstanding portion of the Judgment, and to monthly reductions thereafter to account for subsequently cashed payments. Counsel further advised Debtors' counsel of their desire, with the Ohio Court's approval, for the uncashed portion that expires in January 2022 to be paid into her firm's IOLTA account so that they could continue efforts to locate the class members.  Upon receipt of the balance, they would release the Bond in full.  Fiorelli Declaration, ¶ 8. Ultimately, the Ohio Court will have to address how the funds equal to the unpaid portion of the Judgment are distributed to or for the benefit of the class members.

**OBJECTION TO RELIEF REQUESTED**

I.    **The Motion Does Not Raise Matters That Arise Under, Arise in or Relate to a Case Under Title 11**

13.    The Court has subject matter jurisdiction over the Debtors' Chapter 15 cases pursuant to 28 U.S.C. §§157(a) and 1334(a).  Yet, the matter raised by the Motion does not constitute a core proceeding for purposes of 28 U.S.C. §§ 157(b) and 1334(b) as it is not one that "arises under" title 11 or "arises in" a case under title 11.[5]

14.    The Fifth Circuit has defined core proceedings as those that "involve[] a right created by the federal bankruptcy law" or that "would arise only in bankruptcy." *Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987). A proceeding "arising under" is one that "involve[s] a cause of action created or determined by a statutory provision of title 11." *Id.* Those proceedings "arising

---

[5]  Section 157(b)(2)(P) identifies "recognition of foreign proceedings and other matters under chapter 15 of title 11" as core proceedings."  The Debtors, however, do not identify a single statutory provision under chapter 15 as a basis for the relief they request. See, *In re Cozumel Caribe, S.A., de C.V.*, 482 B.R. 96, 110 (Bankr. S.D.N.Y. 2012) ("In short, other than providing access to courts in the United States, section 1509 is not a self-executing relief section of Chapter 15. Relief to a foreign representative must be based on sections 1507, 1519, 1520 and 1521, subject to limitations that may be imposed under section 1522."). Regardless, the designation of "other matters" under chapter 15 as core proceedings is not determinative of whether the matter raised by the Motion is in fact a core proceeding.  See, *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 676 (S.D.N.Y. 2011) ("that 'recognition of foreign proceedings and other matters under chapter 15 of title 11' are core proceedings is not relevant" to a determination of whether such "other matters" are in fact core proceedings).

in" refer to "those `administrative matters that arise only in bankruptcy cases…those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id*.  "If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding." *Id*.

15.    The Bond is a contract entered pre-petition between non-debtor parties.  *City of San Antonio v. Hotels.com, L.P*., 593 U.S. —, 141 S. Ct. 1628, 1632 (May 27, 2021) ("'A supersedeas bond is a contract by which a surety obligates itself to pay a final judgment rendered against its principal under the conditions stated in the bond") (citation omitted). The obligations of Fidelity, the surety, and the release of the Bond are completely independent of any substantive right created under the Bankruptcy Code and certainly exist outside of bankruptcy.  Thus, it is clear that it is not one that is created or determined by a statutory provision of title 11 or that only arises in bankruptcy cases. Accordingly, the Motion does not involve a core proceeding.

16.    A matter that has a potential effect on a bankruptcy case may be "related to" a case under title 11 and constitute a non-core proceeding for purposes of 28 U.S.C. §§157(c)(1) and 1334(b). *Wood*, 825 F.2d at 97. A proceeding is "at least related to" a bankruptcy case where "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Wood,* 825 F.2d at 93; see also, *Executive Benefits Insurance Agency v. Arkison*, 573 U.S. 25, 38 (2014) (matters involving an effect on the "bankruptcy estate" are related). However, unlike cases filed under other chapters of title 11, the filing of the Debtors' Chapter 15 petition for recognition did not create a bankruptcy estate.  See *In re ABC Learning Ctrs. Ltd*., 728 F.3d 301, 312 (3rd Cir. 2014) (holding that a chapter 15 proceeding does not create a separate bankruptcy estate but rather provides for ancillary proceedings so that a foreign representative need

not initiate a new bankruptcy proceeding in the U.S.); *In re Loy*, 2009 Bankr. LEXIS 2143, at *18 (Bankr. E.D.Va. Aug. 3, 2009) (related to jurisdiction was not available as no estate was created by filing of Chapter 15 petition); *In re Atlas Shipping A/S*, 404 B.726, 739 (Bankr. S.D.N.Y. 2009) (recognizing there is no estate created in a chapter 15 case). As there exists no estate which is conceivably impacted in this case "related to" jurisdiction is lacking.

17.     To the extent bankruptcy jurisdiction does exist, the Ohio Court has concurrent jurisdiction over this matter. 28 U.S.C. § 1334(b). As the Ohio Court has the knowledge and familiarity with the Bond, having presided over the Action and approving the form and amount of the Bond, this Court should defer to that court. See section IV supra.  Since the Ohio Court has continuing jurisdiction and authority over the Bond, it is the proper and appropriate forum to consider and decide any and all issues relating to the Bond, especially whether its terms have been satisfied to warrant its release.[6]

## II.     <u>Just Energy is Not Entitled to Relief Under Sections 105(a) or 363</u>

18.     Just Energy bases its request for relief on Sections 105(a) and 363.  Neither provision, however, affords Just Energy the ability to compel the termination and release of the Bond.

19.     Section 105(a) provides a bankruptcy court authority "to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). But it confers authority to "carry out" the provisions of the Code." *Law v.*

---

[6]  To the extent a stay or injunction implemented by the Court's Recognition Order or the Final CCAA Order, as incorporated by this Court, precludes the Ohio Court's consideration of this matter, the Hurt Judgement Creditors request modification of such stay or injunction to allow this matter to be presented to the Ohio Court. See 28 U.S.C. § 1522(c); *In re Sanjel (USA) Inc., et al.*, Case No. 16-50778-CAG (Bankr. W.D. Tex., July 28, 2016) ("Relief granted under §§ 1519 or 1521 may be modified or terminated at the request of the foreign representative, an interested entity affected by such relief, or on a court's own motion § 1522(c)").

*Siegel*, 571 U.S. 415, 421 (2014); *NorthwestBank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("whatever equitable powers remain the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code"); *Coie v. Sadkin (In re Sadkin)*, 36 F.3d 473, 478 (5th Cir. 1994) (105(a) power is limited to "fashion[ing] such orders as are necessary to further the substantive provisions of the Bankruptcy Code."). "It 'does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law or constitute a roving commission to do equity.'" *Sadkin*, 36 F.3d at 478; see also, *Edwards v. Armstrong World Industries,* 6 F.3d 312, 319 (5th Cir. 1993) ("section 105(a) simply does not give bankruptcy courts authority over assets that are not property of the debtor's estate and in which the debtor has no interest.") *rev'd on other grounds sub nom. Celotex Corp. v. Edwards,* 514 U.S. 300 (1995).  Thus, Just Energy cannot rely on Section 105(a) absent a substantive provision of the Bankruptcy Code that affords it relief.

20.     The only other basis identified by Just Energy in support of its request is Section 363, a provision that governs a debtor's use, sale or lease of "property of the estate."

21.     Yet, the Bond does not constitute property of the Debtors' estates or property or an asset of the Debtors. As mentioned above, the Bond constitutes a contract between the Hurt Judgment Creditors and Fidelity which obligates Fidelity to pay the Judgment under the terms and conditions as stated in the Bond.[7]  *City of San Antonio v. Hotels.com, L.P.*, 593 U.S. —, 141 S. Ct. 1628, 1632 (May 27, 2021); see also, *Edwards* 6 F.3d at 316-17 (any reversionary interest in supersedes bond divests terminates upon finality of appeal and mandate).

22.     In *Edwards*, the Fifth Circuit explained that these bonds are in the nature of letters

---

[7]  Fidelity's obligation "remain[s] in full force and effect" unless one of the conditions stated occurs.  The only applicable event is that the Judgment Debtor "satisfy[ies] the [ ] judgment in full together with the cost, interests and damages for delay."

of credit – and thus are not part of the bankruptcy estate – because "[w]hen the issuer honors a proper draft under a letter of credit, it does so from its own assets and not from the assets of [the debtor] who caused the letter of credit to be issued." *Id.* at 317 quoting *Kellogg v. Blue Quail Energy Inc. (In re Compton Corp.)*, 831 F.2d 586, 589 (5th Cir.1987), *modified on other grounds,* 835 F.2d 584 (5th Cir.1988).

23.     The controlling legal concept here is that payment by the surety is not discharge of the principal's (here, the debtors) obligation, but the discharge of the contract by the surety in favor of the beneficiary: "[t]he surety's obligation on a supersedeas bond once the appeal has been completed is as separate and independent from the principal's obligation as is the bank's obligation on a letter of credit." *Edwards*, 6 F.3d at 317 (internal citations omitted). Therefore, "the bond is not property of the bankrupt's estate once the bond has matured and becomes enforceable." *Id.*

24.     The Fifth Circuit's holding that supersedeas bonds are not part of the bankruptcy estate is echoed by courts around the country: "[b]ankruptcy law provides that although a debtor has an interest in an appellate bond, that interest is "subject to divestiture if the debtor is unsuccessful once the appeal process has been completed." *** It follows then that the underlying bond itself is not property of a bankruptcy estate unless and until the debtor's appeal succeeds." *In re Spiro*, 305 B.R. 142 (Dist. Conn. 2004) (internal citations omitted); *In re Keene Corp.*, 162 B.R. 935, 942 (Bankr.S.D.N.Y.1994) ("The automatic stay … does not prevent final judgment creditors from enforcing their judgments against the appeal bonds. The debtor retains a reversionary interest in an appeal bond subject to divestiture if the debtor is unsuccessful once the appeal process has been completed."); *Carter Baron Drilling v. Excel Energy Corp.*, 76 B.R. 172 (D. Colo. 1987) ("[T]he funds at issue here, which are held by the court in *custodia legis* as a supersedeas bond, are not an asset or property of National's bankruptcy estate, and any contingent reversionary interest

National had in the funds terminated on June 1, 1987, when the Tenth Circuit Court of Appeals affirmed this court's judgment against National."); *In re Duplitronics*, 183 B.R. 1010, 1014-15 (N.D.Ill.1995) ("Since the debtor has no interest in a supersedeas bond after final judgment on an unsuccessful appeal, the bond is not property of the estate."); see also *In re Purifiner Distribution Corp.*, 188 B.R. 1007 (M.D. Fla. Bankr. 1995) ("[T]he supersedeas bond is a bond with the Debtor as a principal and an insurance company as surety. ***An act to enforce the liability of the surety is an act to obtain property of the surety from the surety, not property of the estate from the estate."); *Moran v. Johns-Manville Sales Corp.*, 28 B.R. 376, 378 (N.D. Ohio 1983) ("The supersedeas bond issued by the Federal Insurance Company is likewise not an asset or property of the estate of JM.").

25.     Here all of the Debtors' appeals have been exhausted and failed, so Debtors have no reversionary interest in the Bond. The Bond is a contractual obligation of Fidelity to pay the amount of the Judgment, and that payment would be made solely from Fidelity's assets, not the Debtors' assets.  The Bond is, therefore, not part of a bankruptcy estate, if any, nor is it property or an asset of the Debtor for purposes of Section 363.  Consequently, there is no substantive basis under Sections 105 and 363 to afford the Debtors the relief they request.

### III.     The Relief Sought Effectively Releases and/or Discharges the Obligations of a Non-Debtor Third Party in Violation of Section 524(e)

26.     The relief requested should be denied as it seeks to effectively release and/or discharge all obligations of Fidelity to the Hurt Judgment Creditors.

27.     Section 524(e) of the Bankruptcy Code provides that a debtor's discharge does not affect the liability of a third party or the property of any third party for such debts.  The Fifth Circuit has flatly rejected efforts to release non-debtors in contravention of this provision. See, e.g., *Feld v. Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995) ("Section 524(e) prohibits the discharge of debts of no-debtors"); *Hall v. Natl. Gypsum Co.*, 105 F.3d 225, 229 (5th Cir. 1997), citing *Matter of*

*Edgeworth*, 993 F.2d 51, 53-54 (5th Cir. 1993) (Section 524(e) "specifies that the debt still exists and can be collected from any other entity that might be liable"); *In re Vitro S.A.B. de C.V.*, 701 F.3d 1031, 1061 (5th Cir. 2012) (the Fifth Circuit has "firmly pronounced its opposition to such releases").

28.     The termination and release of the Bond would effectively circumvent this restriction and discharge and release Fidelity before the terms of the Bond are fully satisfied, i.e., the full payment of the Judgment to all Hurt Judgment Creditors. On this basis, the relief should be denied.

**IV.     The District Court for the Northern District of Ohio is the Appropriate Court to Consider any Request to Terminate the Bond.**

29.     Bankruptcy courts and District courts have concurrent jurisdiction over civil proceedings arising under, arising in and related to a case under title 11.  28 U.S.C. § 1334(b). Here, the Ohio Court is better suited to consider whether the Bond should be released at this time based on the efforts of the Judgment Debtors to satisfy the Judgment.[8]

30.     First, the Ohio Court is intimately familiar with this decade old lawsuit, the course

---

[8]  Whether or not the Court concludes that it has jurisdiction, the Ohio Court still has jurisdiction over the Bond. Having obtained recognition from this Court, Just Energy, as the Debtors' foreign representation, could have raised this matter with the Ohio Court. See 11 U.S.C. § 1509(b)(2) (upon being granted recognition under section 1517, "the foreign representative may apply directly to a court in the United States for appropriate relief in that court."); see also, *In re Iida*, 377 B.R. 243, 257 (B.A.P. 9th Cir. 2007) ("§1509 erects a structure in which the foreign representative passes through the bankruptcy court for a recognition decision, the specified consequences of which are that the foreign representative gains the capacity to sue and be sued in United States courts and the authority to apply directly to a court in the United States for appropriate relief, and that all courts in the United States must grant comity or cooperation to the foreign representative."); *In re Soundview Elite, Ltd.*, 503 B.R. 571, 594 (Bankr. S.D.N.Y. 2014) (finding that, in the absence of a chapter 11 case, "chapter 15 recognition is in effect 'the ticket to entry' to the U.S. courts"); *In re Elpida Memory, Inc.*, 2012 Bankr. LEXIS 5367, at *28 (Bankr. D. Del. Nov. 16, 2012) ("The purpose of section 1509 . . . is to allow the foreign representative access to, and standing in, courts in the United States other than the chapter 15 court…it is clear that section 1509(b)(3) … is meant only to streamline the foreign representatives' access to, and cooperation from, other, non-bankruptcy courts in the United States following recognition.").

of its proceedings, the Judgment, the Bond and the considerations made in requiring it, along with the nuances of the class action aspects of the litigation.[9]  Because the Action was not an individual proceeding, but a certified class and collective action, the Ohio Court occupies a unique, fiduciary duty to the absent class members.  The supersedeas bond is one exercise of that duty to protect the underlying judgment and to protect the class members' right to payments. *See Allen v. Bedolla,* 787 F.3d 1218, 1223 (9th Cir. 2015) ("the district court has a fiduciary duty to look after the interests of those absent class members"); *Ehrheart v. Verizon Wireless,* 609 F.3d 590, 593 (3rd Cir. 2010) ("a district court acts as a fiduciary, guarding the claims and rights of the absent class members"); *Dick v. Sprint Communications Co. L.P.,* 297 F.R.D. 283, 294 (W.D. Ky. 2014) ("Rule 23(e) requires the district court to act as a fiduciary, safeguarding the rights of absent class members").

31.     Second, the Debtors have already stipulated that the Ohio Court must be notified of all payments issued, and all class members who are unable to be located or who do not cash their payment.  See, Fiorelli Declaration, ¶ 10, Exhibit 1 (*Hurt*, Stipulated Order, Doc. 980, PageID #s 20007-20008). Such notice is required by the case law discussed above, because District Courts overseeing class litigation have "broad discretionary powers in shaping equitable decrees for distributing unclaimed class action funds." *Lessard v. City of Allen Park,* 470 F. Supp.2d 781, 782 (E.D. Mich. 2007) (citing *Van Gemert v. Boeing Co.,* 739 F.2d 730, 737 (2nd Cir. 1984) and *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1307 (9th Cir. 1990)); *Rosser v. A & S Contracting, Inc.,* No. 2:15-cv-00711, 2017 WL 666121, at *1 (S.D. Ohio Feb. 17, 2017) (citing *Everett v. Verizon Wireless, Inc.,* 460 F.3d 818, 827 (6th Cir.  2006) (abrogated on other grounds)); *Krakauer v. Dish Network, LLC*, 2020 WL 6292991 (M.D.N.C. 2020); *Connor v. JPMorgan Chase*

---

[9]   Law dealing with distribution of class funds, differs widely from distribution of funds in an ordinary judgment.  See, e.g. *In re Lease Oil Antitrust Litigation (No. II)*, 2007 WL 4377835 (S.D. Tex. 2007); and *Van Gemert v. Boeing Co.,* 737 F.2d 730, 737 (2nd Cir. 1984) (disposition of class funds is within the sound discretion of the District Court handling the class proceeding).

*Bank, N.A.*, 2021 WL 1238862, *1 (S.D. Cal. 2021). The Ohio Court's responsibility to the class members; its responsibility and discretion in deciding matters pertaining to unclaimed funds; and the Debtors' agreement that the Ohio Court is the one to monitor uncashed payments, makes it logical that the Ohio Court would resolve the inter-mingled issues involving the uncashed checks and the Bond. Until the Ohio Court addresses those issues, there is no basis to release the entire Bond.

32.    The deferral by a bankruptcy court to the trial court in determining issues relating to the termination of a supersedeas bond is explained by *In re Lyondell Chemical Company, et al*, Case No 09-10023 (Bankr. S.D.N.Y., (March 18, 2009) Order, pp. 5-6. In *Lyondell*, the debtor requested the court to determine the continued viability of a supersedeas bond following the dismissal of the appeal. The Bankruptcy court concluded the courts involved in the rendering of the judgment (and issuance of the bond) were far better suited to decide questions about the bond, and directed the matter to those courts.[10] ("I believe that the New Jersey courts are materially better equipped to construe the Supersedes Bond than I am, and have greater interest in doing so. Thus I will exercise my powers of discretionary abstention under 28 U.S.C. 1334(c), and grant BASF limited relief from the stay to obtain rulings from the New Jersey courts as to the continuing viability of the Supersedeas Bond in light of the Appellate Division's orders.").

33.    Here, the Ohio Court likewise has the familiarity, understanding and experience in construing bonds of this nature.[11]

---

[10]   *Beatrice Foods Co. v. New England Printing & Lithographing Co.,* 930 F.2d 1572, 1574 (Fed. Cir. 1991) ("The interpretation of a bond agreement, however, is a unique task. While the parties' intent is controlling, much of the language in the bond is likely to be boilerplate, with portions dating back more than a century. Cases interpreting past bond agreements must be considered, for they almost certainly influenced the language the bonding company chose.")

[11]   Allowing the Ohio Court to determine the pending request would not violate any bankruptcy stay. First, as noted above, the Bond is not an asset of the Debtors. Second, the Debtors previously waived

### V.    Should this Court Consider the Merits of the Motion,
       it Should Deny the Relief Sought

34.    "[A] bond, being a contract, is controlled by the language in the bond." *Neeley v. Bankers Trust Co. of Texas,* 848 F.2d 658, 659 (5th Cir.1988). Under the terms of the Bond, Fidelity is liable and obligated to the Hurt Judgment Creditors if the Judgment Debtors lose their appeal and do not satisfy the judgment in full. See Exhibit B to Debtors' Motion.  Just Energy concedes this in the Motion.  See, Doc 134, at ¶5 (loses appeals and fails to fully pay judgment).  The Judgment Debtors' appeals are now exhausted, and they have failed to satisfy the judgment in full, with $1.4 Million unpaid. Fiorelli Declaration, ¶ 4, 6 and 7. As mentioned above, contrary to Debtors' suggestion, an uncashed check is not a payment, let alone satisfaction "in full" as the Bond requires.  *See Barnhill v. Johnson*, 503 U.S. 393 (1992)(transfer by check does not occur until it is cashed). By its terms, the Bond may not be released because the full Judgment has not been satisfied.

35.    Denying premature release of the Bond accords with both the language of the Bond and the Bond's purpose, being to defer execution on the Judgment while the appeals were pending. That purpose -- "…. to protect the party prevailing in the trial court from possible future insolvency of the losing party," *Moran*, 28 B.R. at 378, is perfectly exemplified here, because the Judgment Debtors became insolvent while the appeal was pending.[12] If the Bond is prematurely released, the

---

the stay in relation to the *Hurt* proceedings. See Fiorelli Declaration, ¶ 11, Exhibit 2 (Letter from Debtors' counsel to the U.S. Supreme Court, broadly waiving "the automatic stay in respects to these proceedings.") There is no basis for the bond issue to be addressed other than in the *Hurt* proceedings in the Ohio Court.

[12] See, *Poplar Grove Planting & Refining Co., Inc. v. Bache Halsey Stuart, Inc*., 600 F.2d 1189, 1190-91 (5th Cir. 1979):

> The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing part's rights pending appeal. A judgment debtor who wishes to appeal may use the bond to avoid the risk of satisfying the judgment only to find that restitution is impossible after reversal after appeal. At the same time, the bond secures the prevailing

class members who have not been paid, who are now secured by the Bond and Fidelity's obligation to fully pay the Judgment, will be unjustly and improperly relegated to that of unsecured creditors in the Debtors' insolvency proceedings. This is the exact point of having the protection of the Bond, and precisely why courts have declined to release such bonds prior to class members' being fully paid. *See Lester v. Percudani*, 2013 WL 6328452 (M.D. Pa. 2013).

36.     The Debtors insist that the class members' money will be secure because they are a "large corporation, highly regulated, and in the public eye." Debtors' motion ¶31. What does that even mean? It is not the Debtors' bona fides but the ability to force payment that controls. With the Bond, payment is guaranteed (not from the Debtors but from Fidelity the non-debtor surety). The release of the Bond, discharges Fidelity's obligation to the unpaid Hurt Judgment Creditors. Debtors' current self-serving assurances offer no guarantee of payment of the unpaid class members' judgments.[13]

<u>**CONCLUSION**</u>

37.     Based on the foregoing arguments and authorities, the Hurt Judgment Creditors request this Court deny Just Energy's' Motion without prejudice to be re-filed with the Ohio Court in the *Hurt* case. Should this Court reach the merits of Motion, the Hurt Judgment Creditors

---

party against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual appeal.

See also, *Hebert v. Exxon Corp.*, 953 F.2d 936, 938 (5th Cir. 1992) ("The posting of a bond protects the [judgment creditor] from the risk of a later uncollectible judgment and compensates him for delay in the entry of final judgment [upon which he may execute]."); *Grubb v. FDIC*, 833 F.2d 222, 225 (10th Cir. 1987) ("[T]he rationale for requiring a bond pending appeal is to secure the judgment throughout the appeal process against the possibility of the judgment debtor's insolvency").

[13] The relief sought by the Debtors is premised on their representation that payments have been issued to all class members to satisfy the Judgment. The source of the funds used for those payments, however, has not been disclosed. Before there is consideration of any release as to any portion of the Bond, the Debtors should be required to disclose the source of the funds previously paid and those to paid in the future, represent that the transfer of past and future funds were or will be appropriately authorized, and that such payments are and will be valid, binding and unavoidable under any applicable law.

respectfully request that the Court deny the relief requested.  In the alternative, they request that the Bond remain in place to protect those class members who remain owed and entitled to the $1.4 Million that remains due on the Judgment, and that the Court afford them such further protections as appropriate.

**<u>PRAYER</u>**

WHEREFORE, the Hurt Judgment Creditors pray that the Court:

1. Dismiss the Motion for lack of jurisdiction;

2. If the Court concludes that jurisdiction is proper, defer to the Ohio Court for consideration of the Motion, or such future request by the Debtors;

3. If the Court considers the Motion, deny the relief requested, and

4. Grant the Hurt Judgment Creditors such other and further relief to which they are justly entitled.

Respectfully Submitted,

/s/ Mark A. Weisbart
Mark A. Weisbart
Texas Bar No. 21102650
James S. Brouner
Texas Bar No. 03087285
THE LAW OFFICE OF MARK A. WEISBART
12770 Coit Road, Suite 541
Dallas, Texas 75251
(972) 628-4902 Phone
jbrouner@weisbartlaw.net
mark@weisbartlaw.net

COUNSEL FOR HURT JUDGMENT CREDITORS

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies that on October 20, 2021, counsel for the parties held a conference call do discuss the Motion.  While the parties were unable to resolve their differences at that time, they agreed to continue discussions in seeking to resolve the matter.

/s/ James S. Brouner
James S. Brouner

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing instrument was served on the below parties as well as the parties receiving electronic notice through the Court's electronic notification system as permitted by Local Rule 5005-1of the U.S. Bankruptcy Court for the Southern District of Texas, and by United States first class mail, postage prepaid as reflected below, on this the 20th day of October 2021.

/s/ James S. Brouner
James S. Brouner

Matthew D. Cavenaugh
Genevieve M. Graham
**JACKSON WALKER LLP**
1401 McKinney Street, Suite 1900
Houston, Texas 77010 609 Main Street

Brian Schartz, P.C.
Anna Rotman, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
609 Main Street
Houston, Texas 77002

Neil E. Herman
Allyson B. Smith
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022

Fidelity And Deposit Company of Maryland (via United States First Class Mail)
c/o Zurich American Insurance Co
8723 Innovation Way
Chicago, IL 60682

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 15 |
| JUST ENERGY GROUP INC.., *et al.,* | |
| Debtor in a Foreign Proceeding,[1] | Case No. 21-30823 (MI) |

**DECLARATION OF NICOLE T. FIORELLI IN SUPPORT OF HURT**
**JUDGMENT CREDITORS' (INDIVIDUAL AND AS CLASS REPRESENTATIVES)**
**RESPONSE IN OPPOSITION TO DEBTORS' MOTION TO AUTHORIZE AND**
**DIRECT TERMINATION OF SUPERSEDEAS BOND**

I, Nicole T. Fiorelli, hereby declare under perjury:

1. I am an attorney with the law firm Dworken & Bernstein Co., L.P.A., located in Painesville, Ohio (the "Firm"). I have been a partner with the Firm since 2016.

2. I am lead counsel for the plaintiff class ("Plaintiffs") in the case of *Davina Hurt, et al. v. Commerce Energy Inc., et al.*, Case No. 1:12-CV-00758 ("Hurt Action") pending in the United States District Court for the Northern District of Ohio (the "Ohio Court").

3. I submit this Declaration in conjunction with the *Hurt Judgment Creditors' (Individual and as Class Representatives) Response in Opposition to Debtors' Motion to Authorize and*

---

[1] The identifying four digits of Debtor Just Energy Croup Inc.'s local Canada tax identification number are 0469. Due to the large number of debtor entities in these chapter 15 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers are not provided herein. A completed list of such information may be obtained on the website of the Debtors' claims and noticing agent at www.omniagentsolutions.com/justenergy. The location of the Debtors' service address for purposes of these chapter 15 cases is: 100 King Street West, Suite 2360, Toronto, Ontario, ON, M5X 1E1.

Declaration of Nicole T. Fiorelli – Page 1

Exhibit "A"

*Direct Termination of Supersedeas Bond* filed in opposition to *Debtors' Motion to Authorize and Direct Termination of Supersedeas Bond* [Doc. 134] (the "Motion").

4.  Judgment was entered in favor of Plaintiffs in the Hurt Action in 2018. Defendants (Just Energy Group, Inc., Just Energy Marketing Corp., and Commerce Energy, Inc.; Debtors in the captioned proceeding) have exhausted all appeals.

5.  The class Plaintiffs' rights to payment in full of the Judgment is secured by the supersedes bond (the "Bond") – the subject of the Motion.

6.  The Judgment has not been fully satisfied. As of August 10, 2020, $1,414,503.93 due approximately 300 class members remained outstanding.

7.  The checks the Debtors issued to these 300 individuals are expected to expire in January 2022 (the checks were issued in July 2021). At that point, $1,414,503.93 (minus any additional checks cashed) of the Judgment will remain unpaid.

8.  Prior to the Debtors' filing the Motion, I emailed Debtors' counsel with the following offer pertaining to the Bond: "Assuming the payments [previously made to Plaintiffs and counsel] were authorized by court order, we are willing to release the bond as to the amount already paid **and cashed** (emphasis sic), but will need to keep it in place as to any amounts uncashed by the class members, which as of August 10, 2021 was $1,414,503.93. We are willing to further reduce the bond on a monthly basis, to account for further payments that are cashed. When the checks expire in January 2022, we would like (with Judge Gwin's approval) the remaining balance to be paid to us to keep in our firm's IOLTA account[2], so

---

1.   IOLTA accounts are the vehicle required by Ohio law for holding client funds prior to distribution.

Declaration of Nicole T. Fiorelli – Page 2

Exhibit "A"

we may continue to attempt to locate class members. At this point, when the balance is transferred to us, we will release the bond in full."

9. The Debtors never responded to this offer, and instead filed the Motion.

10. The Debtors have previously stipulated that the Ohio Court must be notified of all payments issued, and all class members who are unable to be located or who do not cash their payment.  See Exhibit 1 attached hereto (Hurt Action, Stipulated Order, Doc. 980, PageID #s 2007-2008).

11. The Debtors previously waived the stay imposed in these jointly administered Chapter 15 cases in relation to the Hurt Action.  See Exhibit 2 attached hereto (Letter from Debtors' Counsel to the U.S. Supreme Court broadly waiving "the automatic stay in respect to these proceedings.")

12. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 20, 2021

Nicole T. Fiorelli
Nicole T. Fiorelli

Declaration of Nicole T. Fiorelli – Page 3

Exhibit "A"

# EXHIBIT A-1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVINA HURT, et al.,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 1:12-CV-00758 |
| v. | : | |
| | : | Judge James S. Gwin |
| **COMMERCE ENERGY, INC., et al.,** | : | |
| | : | |
| Defendants. | : | |
| | : | |

## JOINT STIPULATION REGARDING SATISFACTION OF JUDGMENT, PAYMENTS TO CLASS MEMBERS AND AWARD OF SUPPLEMENTAL ATTORNEYS' FEES AND COSTS

Defendants Just Energy Group, Inc., Just Energy Marketing Corporation and Commerce Energy, Inc. ("Defendants" or "Just Energy"), and Plaintiffs Davina Hurt and Dominic Hill, on behalf of themselves and those similarly situated ("Plaintiffs") (collectively, "the Parties"), through their counsel, hereby give notice of their joint stipulation regarding satisfaction of the judgment entry of this court (ECF No. 960) as detailed below.[1]  In addition, the Parties hereby stipulate to an award of supplemental attorneys' fees and costs, as provided below, for fees incurred for legal work by Plaintiffs' counsel including work related to the appeal of this case to the United States Court of Appeals for the Sixth Circuit and for fees incurred in connection with the Defendants' Petition for Writ of Certiorari to the United States Supreme Court.

1.   Satisfaction of Judgment Entry – Attorneys' Fees and Costs

In its September 28, 2018 order of judgment, this court approved an award of attorneys'

---

[1] On October 13, 2020, the parties stipulated to a stay of enforcement of the judgment pending Defendants' Petition for Writ of Certiorari to the United States Supreme Court (ECF No. 975).  On June 7, 2021, the Supreme Court denied Defendants' Petition.  Thereafter, the parties stipulated to the terms of satisfaction of the judgment entry and an award of supplemental fees to Plaintiffs' counsel as outlined herein.

fees to Plaintiffs' counsel in the amount of $2,718,440.75 and an additional amount of $217,120.16 in costs, for a total award of $2,935.560.91 to Plaintiffs' counsel. In addition, the court awarded a combined total of $62,500 as incentive payments to the two named plaintiffs and 21 other class members, to be paid from the award to Plaintiffs' counsel, leaving a total of $2,873,060.91, plus interest, to be paid to Plaintiffs' counsel.

On that total, the parties calculated interest owed on the fee and cost award through July 7, 2021 in the amount of $212,857.03. Accordingly, on July 7, 2021, Defendants wired to lead Plaintiffs' counsel, Dworken & Bernstein, the total amount of $3,085,917.94, representing payment in full of the September 28, 2018 award for attorneys' fees and costs, plus post-judgment interest from the date of the judgment entry. The parties hereby stipulate that this portion of the judgment has been satisfied.

2. Awards to Plaintiffs

In its September 28, 2018 entry, the court also awarded a total of $1,889,156.12 to the eligible plaintiffs as reflected on ECF No. 935-2. Including the $62,500 incentive payments, the total payable to class members is $1,951,656.12, plus interest. The parties have calculated post-judgment interest through July 23, 2021 to be $146,588.53. Accordingly, the Defendants are preparing to pay a total of $2,098.588.53 to the class members listed on ECF 935-2. Payments shall be by check and mailed via U.S. postal service by July 23, 2021. Payments of back wage awards will be made by payroll checks, less applicable withholdings and deductions, and those payments representing the wage portion of the individual awards shall be reflected on IRS W-2 forms for tax year 2021. For those plaintiffs who opted in to the FLSA portion of the case and are eligible to receive liquidated damages awards, Defendants will make those payments by separate checks and IRS 1099 forms will be issued to reflect those payments. The parties will notify the

Exhibit "A-1"

Court once these payments are issued, and will keep the Court apprised of any class members who are unable to be located or who do not cash their payment.

3. <u>Stipulation Regarding Award of Supplemental Attorneys' Fees and Request for Approval</u>

On October 13, 2020, when the parties stipulated to stay the enforcement of the Sixth Circuit's mandate and this court's judgment (ECF No. 975) pending Defendants' petition to the U.S. Supreme Court, Defendants also agreed to supplement the supersedeas bond ordered by this court on November 5, 2018 (ECF No. 966). Specifically, the Defendants increased the bond by $350,000, for a total of $5,600,000.00 (ECF No. 976). After the payments described above, which total $5,184,506.47, the balance of the bond amount totals $415,493.53.

Subject to this court's approval, the parties have negotiated, and Plaintiffs' counsel has agreed to accept the amount of $415,493.53 (the balance of the bond) as payment in full of its supplemental fees and costs.

Plaintiffs submit this fee award is reasonable and should be approved for the following reasons:

As recognized by this Court previously (ECF No. 959), fees and costs to the prevailing party are provided for pursuant to 29 U.S.C. § 216(b) and R.C. § 4111.10(A) for wage and hour violations of federal and Ohio law.

This agreed payment of supplemental fees is *in addition to* the full payment of the judgment plus statutory interest. See Affidavit of Nicole Fiorelli, at ¶ 5, attached hereto as Exhibit A. As such, class members are receiving 100% of the amounts they were awarded by the Court, and the payment of these supplemental attorney's fees will not reduce the class members' payments in any way. *Id*.

The stipulated amount of supplemental attorneys' fees is reasonable in light of Plaintiffs'

Exhibit "A-1"

counsel's actual costs and lodestar (attorney's reasonable hourly rates multiplied by the number of hours reasonably spent on the case) incurred after July 12, 2018[2], which for Plaintiff's counsel Dworken & Bernstein alone[3] exceeds $500,000. *Id.* at ¶ 8. To calculate the lodestar for the supplemental fees, Plaintiffs' counsel used the hourly rates that were previously approved by this Court in its prior order awarding fees and costs. ECF No. 959; Fiorelli Affid. at ¶ 8. The time billed was all reasonably necessary to properly represent the class members' interests and secure a favorable resolution during the appeal. *Id.* This included time spent on matters such as: successfully opposing Defendants' motion for reconsideration, which asked this Court to grant Defendants judgment as a matter of law (*see* ECF Nos. 940, 946); drafting the reply brief in support of the original motion for fees and costs; moving to quash Defendants' related subpoenas; briefing incentive compensation payments for certain Plaintiffs; and preparing for and attending the hearing on fees (*see* ECF Nos. 941, 945, 949, 951, 955, 957, 958, 959, 960); opposing Defendant's request to stay proceedings and securing an increased appellate bond amount (ECF Nos. 962, 966); defending the appeal in the Sixth Circuit, including appellate briefing; responding to supplemental authority by Defendants and reviewing Defendants' *en banc* request; negotiating an increased bond amount and various stipulations in light of Defendants' certiorari petition (*see* ECF No. 975); assisting with response to Defendants' petition to certiorari in the United States Supreme Court; addressing issues related to Defendants' various bankruptcy filings; and class member communication. *See* Fiorelli Affid. at ¶ ¶ 6-7.

For these reasons, Defendants also stipulate to this amount as reasonable and the parties jointly request the Court's approval of the supplemental fee award.

---

[2] The original fee award was based on fees incurred through July 12, 2018. *See* ECF No. 936-2.
[3] Dworken & Bernstein employed counsel to oppose Defendants' Certiorari Petition in the Supreme Court.

Exhibit "A-1"

/s/Nicole T. Fiorelli _____

Nicole T. Fiorelli (0079204)
Frank A. Bartela (0088128)
Dworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, OH  44077
(440) 352-3391
(440) 352-3469 (Facsimile)
nfiorelli@dworkenlaw.com
fbartela@dworkenlaw.com

Attorneys for Plaintiffs

/s/ Shannon K. Patton _____

Shannon K. Patton (0069407)
Edward H. Chyun (0076880)
Alex R. Frondorf (0087071)
LITTLER MENDELSON, P.C.
1100 Superior Avenue, 20th Floor
Cleveland, OH 44114
(216) 696-7600
(216) 696-2038 (Facsimile)
spatton@littler.com
echyun@littler.com
afrondorf@littler.com

Bradley A. Sherman (0063906)
SHERMAN BOSEMAN LEGAL GROUP, LLC
800 West St. Clair Avenue, 4th Floor
Cleveland, OH 44114
(216) 239-1414
(216) 239-1316 (Facsimile)
Bradley@shermanboseman.com

Attorneys for Defendants

**IT IS SO ORDERED.**

DATED:  July _20_, 2021

s/ James S. Gwin _____

Hon. James S. Gwin
United States District Court Judge

# EXHIBIT A-2

# KIRKLAND & ELLIS LLP

AND AFFILIATED PARTNERSHIPS

1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004

Paul D. Clement
To Call Writer Directly:
(202) 389-5000
paul.clement@kirkland.com

(202) 389-5000

www.kirkland.com

Facsimile:
(202) 389-5200

March 27, 2021

Scott S. Harris
Clerk of the Court
Supreme Court of the United States
One First Street NE
Washington, DC 20543

Re: *Just Energy Marketing Corp., et al. v. Hurt, et al.*, No. 20-1093

Dear Mr. Harris:

I write to inform the Court that, on March 9, 2021, petitioner Just Energy Group Inc. filed a voluntary petition under Chapter 15 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas on behalf of itself and certain affiliates, including the other petitioners here. That same day, the bankruptcy court entered an "Order Granting Provisional Relief Pursuant to Section 1519 of the Bankruptcy Code," which provides in relevant part that the automatic stay of Section 362 of the Bankruptcy Code "shall apply" to "any judicial … action or proceeding involving or against the Debtors" within the United States, "except as authorized by Debtors in writing and in their sole discretion." Ex. 1, at ¶2(b)(i).

Pursuant to the bankruptcy court's order, petitioners hereby inform this Court that, in light of the clear circuit split created by the incorrect decision below on an issue of exceptional importance, (a) they will proceed with the above-captioned case in this Court, (b) they hereby waive the automatic stay in all respects to these proceedings, and (3) this letter shall constitute the written authorization and notice required by the bankruptcy court's order (and all parties may rely on this letter as proof that the stay has been lifted for this matter).

Sincerely,

Paul D. Clement
*Counsel for Petitioners*

cc: Counsel of Record

Beijing   Boston   Chicago   Hong Kong   Houston   London   Los Angeles   Munich   New York   Palo Alto   San Francisco   Shanghai

Exhibit "A-2"

# Exhibit 1



# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

ENTERED
03/09/2021

|  |  |
|---|---|
| In re: | Chapter 15 |
| JUST ENERGY GROUP INC., *et al* | Case No. 21-30823 (MI) |
| Debtors in a Foreign Proceeding,[1] | (Joint Administration Requested) |
|  | **Re Docket No.** |

## ORDER GRANTING PROVISIONAL RELIEF
## PURSUANT TO SECTION 1519 OF THE BANKRUPTCY CODE

Upon the motion (the "<u>Motion</u>")[2] filed by the foreign representative (the "<u>Foreign Representative</u>") of the above-captioned debtors (collectively, the "<u>Debtors</u>" or "<u>Just Energy</u>"), seeking provisional relief under the Bankruptcy Code to protect the Debtors and their property within the territorial jurisdiction of the United States pending recognition of the Debtors' voluntary arrangement proceedings commenced under the Companies' Creditors Arrangement Act, R.S.C. 1985, c. C-36 (as amended, the "<u>CCAA</u>") in the Superior Court of Ontario (the "<u>Canadian Proceedings</u>" and such court, the "<u>Canadian Court</u>"); the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. and §1334; and the relief requested in the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and that this Court may enter a final order consistent with Article III of the United States Constitution; venue being proper

---

[1] The identifying four digits of Debtor Just Energy Group Inc.'s local Canada tax identification number are 0469. Due to the large number of debtor entities in these chapter 15 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at www.omniagentsolutions.com/justenergy. The location of the Debtors' service address for purposes of these chapter 15 cases is: 100 King Street West, Suite 2360, Toronto, ON, M5X 1E1.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion or the CCAA Order (as defined herein), as applicable.

before the Court pursuant to 28 U.S.C. § 1410; adequate and sufficient notice of the filing of the Motion having been given by the Foreign Representative; it appearing that the relief requested in the Motion is necessary and beneficial to the Debtors; and no objections or other responses having been filed that have not been overruled, withdrawn, or otherwise resolved; and after due deliberation and sufficient cause appearing therefor, it is hereby **FOUND** that:

A.      The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.      There is a substantial likelihood that the Foreign Representative will successfully demonstrate that the Canadian Proceedings constitute "foreign main proceedings" as defined in section 1502(4) of the Bankruptcy Code.

C.      As evidenced by the CCAA Order, the Canadian Court has determined that the commencement or continuation of any action or proceeding in Canada against the Debtors or their assets should be enjoined pursuant to applicable Canadian law to permit the expeditious and economical administration of the Canadian Proceedings, and such relief will either (a) not cause an undue hardship to any creditors or other parties-in-interest or (b) any hardship to such creditors or parties is outweighed by the benefits of the relief requested.  This Court similarly determines that, consistent with the CCAA Order, the commencement or continuation of any action or proceeding in the United States against the Debtors or their assets should be enjoined pursuant to sections 105 and 1519(a) of the Bankruptcy Code to permit the expeditious and economical

Exhibit "A-2"

administration of the Canadian Proceedings, and such relief will either (a) not cause an undue hardship to any creditors or other parties-in-interest or (b) any hardship to such creditors or parties is outweighed by the benefits of the relief requested.

D.      Unless a preliminary injunction is issued, and unless the Debtors are immediately authorized to comply with the CCAA Order, and unless all creditors, persons, parties in interest, contract parties, lenders and governmental units and agencies located within the territorial United States (collectively, the "U.S. Chapter 15 Parties") are bound by the terms of the CCAA Order pending the upcoming recognition hearing to be held by this Court, there is a material risk that the U.S. Chapter 15 Parties may take certain actions against the Debtors, including exercising certain remedies under existing debt obligations, existing executory contracts, or unexpired leases or under applicable law.  Such actions could (a) interfere with the jurisdictional mandate of this Court under chapter 15 of the Bankruptcy Code, (b) interfere with and cause harm to the Debtors' efforts to administer and implement the Canadian Proceedings, (c) interfere with the Debtors' operations, and (d) undermine the Debtors' efforts to achieve an equitable result for the benefit of all of the Debtors' stakeholders.  Accordingly, there is a material risk that the Debtors may suffer immediate and irreparable injury (with no adequate remedy at law), and it is therefore necessary that the Court grant the relief set forth in this order (the "Order").

E.      The Foreign Representative has demonstrated to the Canadian Court that the incurrence of indebtedness under the DIP Facility and the granting of liens and charge negotiated in connection with the DIP Facility is necessary to prevent irreparable harm to the Debtors because, without such financing, the Debtors will be unable to continue operations and fund their restructuring proceedings, which will significantly impair the value of their assets, and the Canadian Court has approved the DIP Facility as being appropriate and the amount that the Debtors

have been authorized to borrow is reasonably necessary for the continued operations of the Debtors in the ordinary course of business.

F.     The Foreign Representative has demonstrated to the Canadian Court that the terms of the DIP Facility are fair and reasonable and were entered into in good faith by the Debtors and the DIP Lenders and that the DIP Lenders would not have extended financing without the provisions of this Order and the Court's recognition of the protections set forth in the CCAA Order relating to the DIP Facility.

G.     The interest of the public (including the Debtors U.S. based customers) will best be served by this Court's entry of this Order.

H.     The Foreign Representative and the Debtors are entitled to the full protections and rights available pursuant to section 1519(a)(1),(2), and (3) of the Bankruptcy Code because such relief is urgently needed to avoid transfer or infringement of and to protect the assets of the Debtors, particularly including the Debtors' retail electricity contracts and customers located in the territorial United States, and the interests of their creditors until this Court rules on the petition.

**BASED ON THE FOREGOING FINDINGS OF FACT AND AFTER DUE DELIBERATION AND SUFFICIENT CAUSE APPEARING THEREFORE, IT IS HEREBY ORDERED THAT**:

1.     Pending entry of the Recognition Order and notwithstanding anything to the contrary contained in this Order, the Foreign Representative and the Debtors, as applicable, are authorized to comply with the terms, conditions, and provisions of the CCAA Order including, without limitation, the sections of the CCAA Order (a) authorizing the Debtors to obtain credit under the DIP Facility in the amount of up to USD $125 million and granting to the DIP Lenders the DIP Lenders' Charge to authorize the Debtors to enter into, perform and borrow under the DIP Facility, (b) staying the commencement or continuation of any actions against the Debtors and their assets, (c) imposing a stay with respect to claims or actions against the Debtors' directors and

4

officers or their assets in connection with the directors' or officers' positions at the Debtor, and (d) granting the Directors' Charge and Administration Charge. In addition, from entry of this Order until the conclusion of the hearing to consider recognition of the Canadian Proceedings, every U.S. Chapter 15 Party shall be bound by the CCAA Order, subject solely to further order of this Court or the Canadian Court upon prior written notice to the Debtors and the Foreign Representative.

2. Beginning on the date of this Order and continuing until the conclusion of the recognition hearing to be held by this Court (unless otherwise extended pursuant to section 1519(b) of the Bankruptcy Code):

    a. the Foreign Representative is recognized as, and shall be the representative of, the Debtors with full authority to administer the Debtors' assets and affairs in the United States and may operate the Debtors' business and exercise the rights and powers of a trustee unless otherwise specified in the CCAA Order.

    b. Section 362 of the Bankruptcy Code shall apply with respect to the Debtors and the Debtors' property that is within the territorial jurisdiction of the United States. For the avoidance of doubt and without limiting the generality of the foregoing, this Order shall impose a stay within the territorial jurisdiction of the United States of:

        i. the commencement or continuation, including the issuance or employment of process of, any judicial, administrative or any other action or proceeding involving or against the Debtors or their assets or proceeds thereof, or to recover a claim or enforce any judicial, quasi-judicial, regulatory, administrative or other judgment, assessment, order, lien or arbitration award against the Debtors or their assets or proceeds thereof, or to transfer, assign, or exercise any control over the Debtors' assets located in the United States, particularly including the Debtors' retail electricity contracts and customers located in the territorial United States, except as authorized by the Debtors in writing and in their sole discretion;

        ii. except as permitted in the CCAA Order, the creation, perfection, seizure, attachment, enforcement, or execution of liens or judgments against the Debtors' property in the United States or from transferring, encumbering, or otherwise disposing of or interfering with the Debtors' assets or agreements in the United States without the express written consent of the Foreign Representative, after

5

notice and hearing in conformance with this Court's procedures and rules;

iii.    any act to collect, assess, or recover a claim against the Debtors that arose before the commencement of the Debtors' chapter 15 case; and

iv.    the setoff of any debt owing to the Debtors that arose before the commencement of the Debtors' chapter 15 case against any claim of the Debtor.

In the event of any conflict between the scope of the stays and/or injunctions set forth in the CCAA Order and those contained in this Order, the language of the CCAA Order shall prevail, subject to further order of this Court.

c.    section 365(e) of the Bankruptcy Code shall apply with respect to the Debtors' executory contracts and unexpired leases such that, notwithstanding any provision in any such contract or lease or under applicable law, no executory contract or unexpired lease with any of the Debtors may be terminated, cancelled, or modified (and any rights or obligations in such leases or contracts cannot be terminated or modified) solely because of a provision in any contract or lease of the kind described in sections 365(e)(1)(A), (B), or (C) of the Bankruptcy Code, and all contract and lease counterparties located within the United States shall be prohibited from taking any steps to terminate, modify, or cancel any contracts or leases with the Debtors arising from or relating in any way to any so-called "ipso facto" or similar clauses; *provided* that this Order does not impair or affect the rights of any person under sections 559 through 561 of the Bankruptcy Code, subject to the terms of the CCAA Order.

d.    the Foreign Representative shall have the rights and protections to which the Foreign Representative is entitled under chapter 15 of the Bankruptcy Code, including, but not limited to, the protections limiting the jurisdiction of United States Courts over the Foreign Representative in accordance with section 1510 of the Bankruptcy Code and the granting of additional relief in accordance with sections 1519(a) and 1521 of the Bankruptcy Code.

e.    until the conclusion of the recognition hearing to be held by this Court, no U.S. Chapter 15 Party may file an involuntary petition or similar relief against one or all of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.

f.    notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) this Order shall be effective immediately and enforceable upon entry, (ii) the Foreign Representative and the DIP Lenders are not subject to any

6

stay in the implementation, enforcement, or realization of the relief granted in this Order, and (iii) the Foreign Representative is authorized and empowered, and may, in his discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

g.    effective upon entry of this Order, section 525 of the Bankruptcy Code shall be in full force and effect in these chapter 15 cases and with respect to each of the Debtors, and this Court shall retain exclusive jurisdiction to hear any purported violations thereof, which requests may be brought by way of an expedited emergency motion.

h.    any and all landlords or other parties with a lease of premises to the Debtors located within the United States are hereby prohibited from: taking any steps to cancel, terminate, or modify any lease for any reason, including non-payment of rent and/or due to any ipso facto clause described by section 365(e)(1) of the Bankruptcy Code; enforcing any "landlord lien", possessory lien or similar lien against any property of the Debtor; changing the locks or codes on any of the Debtors' premises; or commencing or continuing any eviction or similar proceedings.

3.    Pending entry of the Recognition Order, the Foreign Representative and the Debtors are entitled to the benefits of, and may comply with, the terms and conditions of the DIP Financing, including but not limited to, the payment of associated fees and expenses as they come due without further notice or order of this Court. The CCAA Order provides, "that the DIP Agent and the DIP Lenders shall be entitled to the benefit of and are hereby granted a charge (the "**DIP Lenders' Charge**") on the Property,[3] which DIP Lenders' Charge shall not secure an obligation that exists before this Order is made" and "that the filing, registration or perfection of . . . the DIP Lenders' Charge . . . shall not be required, and that the Charges shall be valid and enforceable for all purposes, including as against any right, title or interest filed, registered, recorded or perfected subsequent to the Charges coming into existence, notwithstanding any such failure to file, register, record or perfect." *See* CCAA Order, ¶¶ 38, 44. To the extent authorized

---

[3]   "Property" means Just Energy's current and future assets, licenses, undertakings and properties of every nature and kind whatsoever, and wherever situate including all proceeds thereof. *See* CCAA Order, ¶ 4.

Exhibit "A-2"

under the CCAA Order, the Court recognizes, on a provisional basis, the DIP Lenders' Charge, as defined in the CCAA Order, granted in the CCAA Order which applies to all of the Debtors' assets located in the United States, subject to the priorities, terms, and conditions of the CCAA Order, to secure current and future amounts outstanding under the DIP Facility.

4.     To the extent provided in the CCAA Order, and based on the finding therein and to promote cooperation between jurisdictions in cross-border insolvencies, the Debtors are hereby authorized to execute and deliver such term sheets, credit agreements, mortgages, charges, hypothecs and security documents, guarantees, and other definitive documents as are contemplated by the DIP Facility (collectively, the "DIP Documents") or as may be reasonably required by the DIP Lenders pursuant to the terms thereof, and the Debtors are hereby authorized to pay and perform all of its indebtedness, interest, fees, liabilities, and obligations to the DIP Lenders under and pursuant to the DIP Facility without any need for further approval from this Court.

5.     This Order shall be sufficient and conclusive notice and evidence of the grant, validity, perfection, and priority of the liens granted to the DIP Lenders in the CCAA Order without the necessity of filing or recording this Order or any financing statement, mortgage, or other instrument or document which may otherwise be required under the law of any jurisdiction; *provided* that the Debtors are authorized to execute, and the administrative agent under the DIP Facility may file or record, any financing statements, mortgages, other instruments or any other DIP Document to further evidence the liens authorized, granted, and perfected hereby and by the CCAA Order.

6.     The validity of the indebtedness, and the priority of the liens authorized by the CCAA Order and made enforceable in the United States by this Order shall not be affected by any reversal or modification of this Order, on appeal or the entry of an order denying recognition of

the Canadian Proceedings pursuant to the terms of the CCAA Order and sections 105, 1517, and 1519 of the Bankruptcy Code.

7.       No action, inaction, or acquiescence by the DIP Lenders, including, without limitation, funding the Debtors' ongoing operations under this Order, shall be deemed to be or shall be considered as evidence of any alleged consent by the DIP Lenders to a charge against the collateral pursuant to sections 506(c), 552(b), or 105(a) of the Bankruptcy Code.  The DIP Lenders shall not be subject in any way whatsoever to the equitable doctrine of "marshaling" or any similar doctrine with respect to the collateral.

8.       Effective on a provisional basis upon entry of this Order, to the extent precluded by or provided for under the CCAA Order, no person or entity shall be entitled, directly or indirectly, whether by operation of sections 506(c), 552(b), or 105 of the Bankruptcy Code or otherwise, to direct the exercise of remedies or seek (whether by order of this Court or otherwise) to marshal or otherwise control the disposition of any collateral or property after a breach under the DIP Facility, the DIP Documents, the CCAA Order, or this Order.

9.       In accordance with the CCAA Order, the Foreign Representative and the Debtors, as applicable, are authorized to pay or remit (a) any taxes (including, without limitation, sales, use, withholding, unemployment, and excise) the nonpayment of which by any Just Energy entity could result in a responsible person associated with a Just Energy entity being held personally liable for such nonpayment and (b) taxes related to income or operations incurred or collected by a Just Energy entity in the ordinary course of business.

10.      Pursuant to Bankruptcy Rule 7065, the security provisions of Rule 65(c) of the Federal Rules of Civil Procedure are waived.

Exhibit "A-2"

11.     Notice of this Order will be provided to:  (a) the Office of the United States Trustee; (b) the United States Attorney's Office for the Southern District of Texas; (c) administrative agent to the prepetition credit agreement and counsel thereto; (d) the Provisional Relief Parties; (e) all persons or bodies authorized to administer the Canadian Proceedings; and (f) any other parties of which the Foreign Representative becomes aware that are required to receive notice pursuant to Bankruptcy Rule 2002(q); and (g) such other entities as this Court may direct (collectively, the "Notice Parties"), which satisfies the requirements of Bankruptcy Rule 2002(q).  In light of the nature of the relief requested, no other or further notice is required.

12.     Service in accordance with this Order shall be deemed good and sufficient service and adequate notice for all purposes.  The Foreign Representative, the Debtors, and their respective agents are authorized to serve or provide any notices required under the Local Rules.

13.     The banks and financial institutions with which the Debtors maintain bank accounts or on which checks are drawn or electronic payment requests made in payment of prepetition or postpetition obligations are authorized and directed to continue to service and administer the Debtors' bank accounts without interruption and in the ordinary course and to receive, process, honor and pay any and all such checks, drafts, wires and automatic clearing house transfers issued, whether before or after the Petition Date and drawn on the Debtors' bank accounts by respective holders and makers thereof and at the direction of the Foreign Representative or the Debtor, as the case may be.

14.     The Foreign Representative is authorized to take all actions necessary to effectuate the relief granted pursuant to this Order.

Exhibit "A-2"

15. This Court shall communicate directly with, or request information or assistance directly from, the Canadian Court or the Foreign Representative, subject to the rights of a party in interest to notice and participation.

16. This Court shall retain jurisdiction with respect to the enforcement, amendment or modification of this Order, any requests for additional relief or any adversary proceeding or contested matter brought in and through the chapter 15 case, and any request by an entity for relief from the provisions of this Order, for cause shown, that is properly commenced and within the jurisdiction of this Court.

Signed: March 09, 2021

Marvin Isgur
United States Bankruptcy Judge

Additionally, the Court finds that any payments made to ERCOT are made subject to all of the Debtors' rights to contest those payments, and all rights to receive a refund or credit as allowed by applicable law. Although the Court recognizes the authority to make payments to ERCOT as granted by the Canadian Order, this Court neither adds nor subtracts from any such authorization.

Finally, it is further ordered that the Court applies § 525 of the Bankruptcy Code to this recognition order. Pending entry of an order by this Court to the contrary, the United States Bankruptcy Court for the Southern District of Texas reserves exclusive subject matter jurisdiction for any relief sought under § 525. This provision is made to assure that this recognition order fully complies with US public policy. This paragraph is entered with full respect and comity to the difficult work being done by the Court's Canadian counterpart, and with this Court's thanks.

Exhibit "A-2"